Commonwealth *v*. Williams, Appellant.

Submitted March 19, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*John W. Packel,* Assistant Defender, and *Vincent J. Ziccardi,* Defender, for appellant.

*John H. Isom* and *David Richman,* Assistant District Attorneys, *Abraham J. Gafni,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

OPINION BY CERCONE, J., September 23, 1974:

This appeal arises from the judgment of sentence of the court below after the jury returned a verdict of guilty of larceny and burglary. The appellant does not question the sufficiency of the evidence in this case, which was overwhelming, but argues that a remark made by the prosecutrix was so highly prejudicial that the lower court erred in refusing to grant the appellant's timely motion for a mistrial. The record indicates that during the redirect examination of the prosecutrix, the following dialogue transpired: "Q. Were you able to identify the defendant at the preliminary hearing without anybody pointing to him or pointing him out? A. I was able to identify him, although he did look different. Q. In what way? A. His hair was different and his face had begun to fill. Q. What do you mean by that? A. The first time I saw him he had a gloss on his hair and when I saw him in the courtroom, preliminary hearing, he didn't have a gloss. Q. What do you mean by his face had begun to fill? A. Shall I really tell you what I meant? Q. Yes. A. Well, if a man is without drugs for nine days he may gain a little weight. MR. PENNEYS: Objection. THE COURT: Objection sustained. THE WITNESS: I asked him if I could say it. THE COURT: I say you cannot." After denying the appellant's mistrial motion at side bar, the court instructed the jury as follows: "THE COURT: Members of the jury, this lady has been talking to you about something she thinks happened, that he used narcotics. There is nothing in this case about that. That is something in her mind and we try cases on

facts and the fact she had a theory as to why, to her, this man's face changed has nothing whatsoever to do with this case. Therefore, members of the jury, if as and when you are sent to the jury room you are to totally disregard that answer and not use it in any way in determining the final conclusion in this case. Strike out what this witness said about drugs. You may proceed."

The appellant argues that despite the court's instruction the prosecutrix' remark concerning his use of drugs was tantamount to an improper introduction of evidence of prior criminal conduct by the Commonwealth, and so prejudiced the jury as to deprive him of a fair trial. See *Commonwealth v. Groce*, 452 Pa. 15 (1973); *Commonwealth v. Allen*, 448 Pa. 177 (1972). Thus, the appellant contends that, because *Allen* and *Groce* both suggest that improper references to prior criminal conduct constitute reversible error, instructing the jury to disregard such evidence does not adequately remove its taint from the minds of the jurors.

At the outset we note that this court has most recently rejected the argument that a reference to the drug addiction of the accused necessarily carries with it the inference that the accused has engaged in prior criminal conduct. *Commonwealth v. Quarles*, 230 Pa. Superior Ct. 231 (1974). That decision alone would be dispositive of the appellant's argument that drug addiction and prior criminal conduct are necessarily inferentially connected. However, on the facts in this case, we need not rely solely on the *Quarles* case in affirming the judgment of sentence of the court below.

First, as the quoted portion of the record above indicates, in the instant case the lower court sustained the appellant's objection, struck the testimony and vigorously admonished the jury to disregard it. This case, therefore, is similar to the United States Supreme Court's decision in *Spencer v. Texas*, 385 U.S. 554

(1967). Therein the High Court confronted a Texas recidivist statute which allowed the jury to enhance the punishment provided for a crime if the accused had a record of previous criminal convictions. The special problem with the Texas statute was that the jury was informed of the previous crimes before it determined the guilt or innocence of the accused. In such a situation the Texas trial court customarily instructed the jury that testimony concerning prior crimes was not to be taken into account in assessing the defendant's guilt or innocence, but should only be used to determine the proper punishment. Thus, the issue of the sufficiency of a limiting charge by the court on the matter of prior criminal conduct was squarely before the Supreme Court. As Mr. Justice HARLAN stated the question in writing for the majority: "The common and sole constitutional claim made in these cases is that Texas' use of prior convictions in the current criminal trial of each petitioner was so egregiously unfair upon the issue of guilt or innocence as to offend the provisions of the Fourteenth Amendment...." *Id.* at 559.

The Court in *Spencer* directly confronted the question of whether the law can reasonably expect that a jury will follow the trial court's instruction to limit the use of inflammatory or potentially prejudicial evidence to its proper purpose. The Court concluded: "It would be extravagant in the extreme to take Jackson [v. Denno, 378 U.S. 368 (1964)][1] as evincing a general distrust on the part of this Court of the ability

---

[1] *Jackson v. Denno* required that the issue of the voluntariness of a confession not be left for the jury's determination along with the question of guilt or innocence. Rather, the court should make the determination of voluntariness as a matter of law prior to trial. The Court in *Spencer v. Texas* stated that the area of confessions was one "that has been characterized by the development of particularly stiff constitutional rules." *Id.* at 564.

of juries to approach their task responsibly and to sort out discrete issues given to them under proper instructions by the judge in a criminal case, or as standing for the proposition that limiting instructions can never purge the erroneous introduction of evidence or limit evidence to its rightful purpose." *Id.* at 565.

*A fortiorari,* the rationale of *Spencer* precludes our finding here that the prosecutrix' reference to the appellant's drug use required, *ipso facto,* that the trial court grant the appellant a new trial.[2] The instruction by the court herein did not merely inform the jury that the remark should be disregarded, but that it was "something in her mind"—only the "theory" of the prosecutrix and not a fact.

The dissent's reliance, in the instant case, on *Commonwealth v. Rivers,* 218 Pa. Superior Ct. 184 (1971), does not affect our conclusion. *Rivers* involved a co-defendant who testified at his trial against his accomplices, even though he had not pleaded guilty to two of the three offenses with which he had been jointly charged. During the Commonwealth's direct examination of that co-defendant, Rivers, he admitted that he had a record of prior convictions of various crimes, some of which were not admissible for impeachment purposes. He also admitted that a murder charge was currently pending against him. There were no objections to this testimony. At the close of trial, the lower court indicated that it thought Rivers had entered a plea of guilty to all three charges. The Commonwealth corrected the court's misconception and reminded it again of the

---

[2] See *Commonwealth v. Bighum,* 452 Pa. 554 (1973). Therein our Supreme Court held that reversible error exists when the court allows *improper* testimony of prior crimes into evidence, even though it instructs the jury to consider the testimony only in weighing the credibility of the defendant. Of course, since the testimony was improperly admitted, the trial court erred in allowing the jury to consider it for any purpose. *Bighum,* therefore, is not on point.

pending murder charge. The court then found Rivers guilty of the two offenses to which he had entered pleas of not guilty.

It is obvious that *Rivers* has absolutely nothing to do with the question of the efficacy of limiting or exclusionary instructions by a jury. In that case the prejudicial testimony came into evidence without objection, was repeatedly pressed to the court's attention by the Commonwealth and, in the context of that case, was obviously relied upon by the court in reaching its decision on Rivers' guilt of the two unrelated offenses with which he stood charged—a determination which the trial court did not even conceive it was required to make when it received the evidence. As our Court concluded in that case: "Had the judge been aware that he was still trying appellant on two bills [of indictment], we are certain that he would have excluded the irrelevant and prejudicial testimony." *Id.* at 188. That statement clearly refutes what the dissent in the instant case considers *Rivers* as holding. The *Rivers* case suggests that if the trial court had excluded the irrelevant and prejudicial testimony, the law would not presume that by merely hearing the evidence the court was irremediably prejudiced against the defendant.[3]

Second, even if we were to determine that the testimony concerning the defendant's drug addiction was tantamount to testimony of prior criminal conduct, and that limiting instructions would not purge the taint of such testimony, we would still not find any reversible error under the facts of this case. We recog-

---

[3] One recent study indicates that juries are not likely to disregard the limiting instructions of a court and draw prejudicial and improper inferences when evidence of prior criminal convictions is introduced. See Kalven & Zeisel, The American Jury (1966). The study concluded that, "Neither [a judge] nor [a jury] can be said to be distinctively gullible or skeptical." *Id.* at 180.

nize that our Anglo-American system of law has long held that evidence of criminal activity unconnected with that of which an accused stands charged may not be introduced to show a predisposition toward criminal conduct, primarily because it is largely irrelevant and highly prejudicial to the accused's constitutionally protected presumption of innocence: *Commonwealth v. Boulden,* 179 Pa. Superior Ct. 328 (1955). See also Note, 113 U. Pa. L. Rev. 382 (1965). However, its admission is justified under certain circumstances. See, e.g., *Commonwealth v. Jenkins,* 442 Pa. 588 (1971); *Commonwealth v. James,* 433 Pa. 508 (1969); *Commonwealth v. Nelson,* 396 Pa. 359 (1959); *Commonwealth v. Wable,* 382 Pa. 80 (1955); *Commonwealth v. Heller,* 369 Pa. 457 (1952).

"Under the exceptions the commission of an offense by the defendant  other than the one with which he is charged may be received for the purpose of showing intent, guilty knowledge, motive, identity, plan, the accused to be one of an organization banded together to commit crimes of the nature charged, part of a chain of circumstances or one of a sequence of acts, or part of the natural developments of the facts, or mental condition, when insanity is a defense or, within limitations, for the purpose of fixing the penalty in murder cases." *Commonwealth v. Boulden,* 179 Pa. Superior Ct. at 336. See also *Commonwealth v. Williams,* 307 Pa. 134, 148 (1932). Unless one of the exceptions obtain, the admission of such testimony into evidence constitutes error: *Commonwealth v. Clark,* 453 Pa. 449 (1973); *Commonwealth v. Allen,* 448 Pa. 177 (1972).

In the instant case, it was *admitted* that the testimony was relevant to show motive; for as the Appellant states, it is well known that addicts frequently commit crimes against property to support their habits. Despite this, the dissent does not indicate why the testi-

mony was improper even though it was relevant to show motive and fit one of the well-recognized exceptions to the general rule excluding evidence of prior criminal conduct.[4]

The authorities are unanimous in holding motive to be an exception or "special circumstance" justifying the admission of evidence concerning prior criminal conduct. In *Commonwealth v. Heller,* supra, the Supreme Court held that the introduction of testimony of an illicit affair that the appellant had with his sister-in-law (i.e., proof of the crime of adultery) was not error, because in a trial for the murder of his wife, the testimony supplied a motive for his committing that crime. In so holding the Court stated that the appellant's objection was "a misapprehension as to the scope and purpose of [the rule prohibiting the evidence of prior criminal conduct], which was intended merely to prevent blackening a defendant's reputation or attempting to prove a disposition to commit crime, but if there is another legitimate purpose, as . . . to show motive, the [rule] does not prohibit the Commonwealth from such interrogation. . . ." See also *Commonwealth v. James,* supra; *Commonwealth v. Patskin,* 372 Pa. 402 (1953) ; *Commonwealth v. Peyton,* 360 Pa. 441 (1948) ; *Commonwealth v. Jones,* 269 Pa. 589 (1921). The federal courts and the commentators agree; and, as Professor Wigmore has stated, the relevancy of other criminal offenses to show motive "has never been doubted." Wigmore on Evidence §306 at p. 207 (3rd ed. 1940). See also Federal Rules of Evidence, Rule 404; Jenkins, Pennsylvania Trial Evidence Handbook §4.7 (1974) ; McCormick on Evidence §190 (2d ed. 1972) ; Henry, Pennsylvania Evidence §26 (1953) ; ALI, Model Code of Evidence, Rule 311.

---

[4] Indeed, in his brief the appellant asserts: "There is no necessity to discuss here when 'special circumstances' do apply which permit the admission of evidence of other criminal activity. . . ."

As we stated above, the defendant's drug addiction tended to establish a motive for his committing a larcenous act; since, as Judge HOFFMAN also concludes in point, it is a well-known fact that most addicts have an appetite for narcotics which, given its exorbitant and unconscionable cost, far outstrips their ability to satiate from their legitimate income, and thereby creates a daily and compelling insolvency.[5] This establishes more than a *predisposition* to commit larcenous crimes, it provides a *reason* for committing them; and hence, a motive.[6]

While Pennsylvania has not had the occasion to treat the particular problem of drug addiction as a motive for committing a larcenous act, other jurisdictions have considered the problem and treated its admissibility simply as a question of relevance. See *United States v. Mullins,* supra note 5; *State v. Howell,* 474 P.2d 778 (Ore. 1970); *State v. Cuerro,* 415 P.2d 28 (Ore. 1966). See also *People v. Durso,* 239 N.E.2d 842 (Ill. 1968); *State v. Homer,* 206 A.2d 905 (N.J. Super. 1964). All these cases demonstrate, in the context of narcotics abuse, the long-standing rule that "evidence of motive is admissible even though it may be prejudicial in the sense that it will arouse or inflame the jury against the defendant." 1 Wharton's Criminal Evidence §166 at p. 65 (12th ed. Supp. 1972).

---

[5] In *Davis v. United States,* 409 F. 2d 453 (D. C. Cir. 1960), the trial court allowed highly prejudicial testimony concerning the defendant's impoverished condition to be admitted into evidence. The circuit court found that the defendant failed to make a proper objection and stated: "When the trial judge noted that the question was relevant to motive, defense counsel did not object that it resulted in a prejudice that outweighs relevance." The court, therefore, affirmed.

[6] We are *not* suggesting, however, that on balance the testimony would have been admissible had it not been conjectural. See *Commonwealth v. Quarles,* 229 Pa. Superior Ct. at 363.

Finally, the evidence developed at trial in this case indicates that if there were any error in the trial court's refusal to grant a mistrial it would be harmless beyond a reasonable doubt, for there is no reasonable possibility that the evidence complained of might have contributed to the conviction: *Chapman v. California,* 386 U.S. 18 (1967).

The particular burglary and larceny here involved occurred at approximately 9:20 P.M. on February 15, 1972. The complaining witness, Victoria Luff, was arriving home in Philadelphia when she noticed a man across the street watching her. As she unlocked the door, the man approached her. She grew fearful, closed the door, and entered the church next door where she felt she would be safer. After remaining in the church for several minutes, she came out and noticed that the lock on her door was missing and several lights were on inside the house. She then re-entered the church and called the police. After informing the police that a crime was in progress in her house, she returned to the street to await their arrival. While she stood there a man emerged from her house carrying her television, tape recorder and clock radio. Knowing that the police would want a description, she viewed the man carefully for more than a minute. Lights from her home and the church illuminated the burglar's face.

Shortly after he left the scene the police arrived and proceeded, with Miss Luff in the patrol car, to search the neighborhood for the intruder. A few minutes later they found him, and one of the officers called him over to the car. When the appellant approached the car and saw Miss Luff through the window, he shouted, "Oh, no!" and fled. He was soon apprehended in a parking lot nearby.

The next morning Miss Luff searched the vicinity where the police and she had stopped the appellant.

In the yard of a vacant house in that area she found the stolen goods.

At the trial the victim's identification of the appellant was strong and certain. Although the appellant had gained weight and changed his hair style, on cross-examination Miss Luff would only concede, "Well, I am human and I could be mistaken, but I am reasonably positive." The officer who had aided Miss Luff in apprehending the appellant corroborated her story, or at least those portions which he personally had witnessed, and identified the appellant as the man he captured in the parking lot. The appellant introduced no evidence in his defense.

Although *Chapman v. California,* supra, suggests that there may be errors so detrimental to the accused's right to a fair trial that the harmless error rule may not be applied,[7] the erroneous admission of evidence of prior criminal conduct is not one of them. See *Bates v. Nelson,* 485 F.2d 90 (9th Cir. 1973).

In *Commonwealth v. Cannon,* 453 Pa. 389 (1973), the Commonwealth on cross-examination elicited the response from the defendant that he had served time as a juvenile offender. In affirming the lower court's denial of the appellant's timely motion for a mistrial, the Supreme Court stated: "Additionally, even if we assume that it was error to refuse to grant a mistrial on the basis of these disclosures, it was harmless error beyond reasonable doubt." *Id.* at 394. See also *Commonwealth v. Pearson,* 427 Pa. 45 (1967).

For each and all of the above reasons, the judgment of the sentence of the lower court is affirmed.

---

[7] See, e.g., *Payne v. Arkansas,* 356 U.S. 560 (1958) (coerced confession) ; *Gideon v. Wainwright,* 372 U.S. 335 (1963) (right to counsel) ; *Tumey v. Ohio,* 273 U.S. 570 (1927) (right to an impartial judge).

CONCURRING OPINION BY SPAETH, J.:

I agree that the trial judge's curative instructions were adequate, but I cannot agree with the suggestion that whenever a defendant is charged with larceny the Commonwealth may prove he committed a prior narcotics offense.

The rule that evidence of a prior crime is admissible to prove a defendant's motive assumes a "logical connection" between the prior crime and the crime for which the defendant is on trial. *Commonwealth v. Peterson,* 453 Pa. 187, 198, 307 A.2d 264, 269 (1973); *Commonwealth v. Irons,* 230 Pa. Superior Ct. 56, 326 A.2d 488 (1974). A case illustrating this is *Fuller v. State,* 269 Ala. 312, 113 So.2d 153 (1959), *cert. denied,* 361 U.S. 936 (1960). Fuller, Chief Deputy Sheriff of Russell County, Alabama, was charged with the murder of Albert Patterson, the Democratic nominee for Attorney General of the state. The identity of Patterson's killer was at issue. On appeal it was held that the trial court did not err in admitting evidence that during his campaign Patterson had said he would eradicate vice, particularly in Russell County, and that after the killing Fuller had said he had received money from slot machine operations in Russell County and had also accepted bribes in connection with the operation of houses of prostitution. Another case in which there was a logical connection between the two crimes is *United States v. Montalvo,* 271 F.2d 922 (2d Cir. 1959). Montalvo and Rovira, co-defendants, were seen in Rovira's automobile with a brown paper bag. Montalvo went into his apartment, where he was arrested and a brown paper bag with heroin inside was found. Rovira was seen driving slowly by Montalvo's apartment house, and was arrested in a nearby drug store. A search of his person disclosed a penknife, its blade caked with heroin. In upholding admission of the penknife the court (FRIENDLY, C. J.) said: "The evi-

dence was not admitted to show that since William Rovira had committed another narcotics offense at some unspecified date, he might be supposed capable of committing another one now. The government was seeking to show that Rovira, who had been with Montalvo earlier, was about to rejoin him to carry forward the illegal enterprise." *Id.* at 927.

Where there is no logical connection between the crimes, evidence of the prior crime is inadmissible. This may be seen from *People v. Enriquez,* 190 Cal. App. 2d 481, 11 Cal. Rptr. 889, *cert denied* 368 U.S. 1002 (1962), which is rather similar to the present case. The two defendants committed murder while trying to rob a store. When questioned by the police one of the defendants was asked whether he was using narcotics the day of the crime. The defendant answered that he was a narcotics user and believed he was using narcotics then. The police asked the other defendant the same question. He answered that he was a narcotics user and that he believed that about the time the crime was committed he was "hooked." The trial judge admitted these questions and answers into evidence. On appeal the People sought to uphold the admission as relevant to the defendant's motive. In holding the admission error (although on the record harmless) the court said: "There was no connection whatever between the [defendants'] addiction to narcotics and commission of the offenses charged. The evidence of addiction was not adduced in making proof of those charges. It was not admissible as evidence of motive for the offenses, which was conclusively shown by the attempted robbery [citation omitted].

. . . .

"The purpose of the People must have been to furnish a basis for their contention that the [defendants] were generally disposed to the commission of crime. This

was not a legitimate purpose." *Id.* at 485-486, 11 Cal. Rptr. at 891.

This observation is equally applicable to the present case. The proposition that "it is well known that addicts frequently commit crimes against property to support their habits" is not a proposition to which I can subscribe. To be sure, some persons addicted to some drugs no doubt commit "crimes against property" to get money to buy the drugs they crave. But other addicts commit other crimes, such as prostitution or forging checks or forging prescriptions. And still others are addicted to drugs they can afford to buy without committing crimes. But even accepting the proposition, it is, quite simply, a statement that a drug addict is a bad person. It is therefore irrelevant to a criminal case: "Inflexibly the law has set its face against the endeavor to fasten guilt upon [a defendant] by proof of character or experience predisposing to an act of crime (Wigmore, Evidence, vol. 1, §§57, 192; People v. Molineux, 168 N.Y. 264, 61 N.E.2d 6). The endeavor has been often made, but always it has failed." *People v. Zackowitz*, 254 N.Y. 192, 197, 172 N.E. 466, 468 (1939) (CARDOZO, Ch.J.).

WATKINS, P. J., and JACOBS, J., join in this opinion.

---

DISSENTING OPINION BY HOFFMAN, J.:

This appeal raises the question of whether appellant was unduly prejudiced by the prosecutrix's reference to him as a drug user.

Appellant was tried before the Honorable Earl CHUDOFF[1] and a jury on August 15, 1972 in Philadel-

---

[1] In his opinion, Judge CHUDOFF chided the trial lawyers for filing "rubber stamped" post-trial motions and for failing to comply with his requests to file briefs prior to argument on the Post Trial Motions. Such failures place undue burdens on the trial court and frequently lead to unnecessary appeals because all the facts and issues are not presented to the trial judge.

phia on charges of burglary, larceny, and receiving stolen goods. The facts adduced at trial indicate that Miss Victoria Luff, on February 15, 1972 at 9:20 p.m., saw a 5'6" black man leave her house carrying a television, tape recorder, and clock radio. The appellant was apprehended for the commission of this crime. At trial, Miss Luff identified appellant as the man she saw leaving her home on the evening in question.

On redirect examination of Miss Luff, the assistant district attorney endeavored to bolster her already positive identification by pursuing the following line of questioning:

"Q. Were you able to identify the defendant at the preliminary hearing without anybody pointing to him or pointing him out?"

"A. I was able to identify him, although he did look different."

"Q. In what way?

"A. His hair was different and his face had begun to fill."

. . . .

"Q. What do you mean by his face had begun to fill?

"A. Shall I really tell you what I meant?"

"Q. Yes.

"A. Well if a man is without drugs for nine days he may gain a little weight."

The trial court sustained defense counsel's immediate objection to this response, but denied defense counsel's request for a mistrial. Instead, Judge CHUDOFF promptly instructed the jury to disregard Miss Luff's reference to the appellant's use of drugs.

In *Commonwealth v. Trowery*, 211 Pa. Superior Ct. 171, 173-174, 235 A.2d 171 (1967), Judge SPAULDING set forth the rationale for the court's refusal to admit evidence of a defendant's other criminal activity: "The purpose of this rule is to prevent the conviction of an ac-

cused for one crime by the use of evidence that he has committed other unrelated crimes, and to preclude the inference that because he has committed other crimes he was more likely to commit that crime for which he is being tried. The presumed effect of such evidence is to predispose the minds of the jurors to believe the accused guilty, and thus effectually to strip him of the presumption of innocence."

The Pennsylvania Courts have not only recognized the potential prejudice of admitting evidence of other crimes against a defendant, but have also held the admission of such evidence to be reversible error. In *Commonwealth v. Bruno,* 215 Pa. Superior Ct. 407, 258 A. 2d 666 (1969), this Court reversed a conviction because the prosecutrix identified the defendant from police mug shots and thereby related the accused to other crimes. The conviction was reversed even though the prosecutrix had made a positive identification which could not be shaken by cross examination.

In the instant case, the identifying witness referred to the appellant in a manner implying his use of drugs. By such reference, the jury was likely to be prejudiced against the appellant because of the implied use and possession of illegal drugs, a criminal offense.

In the present matter Judge CHUDOFF immediately instructed the jury to disregard the prosecutrix's accusation that appellant was involved with drugs. In many instances, a curative charge is sufficient to erase prejudicial remarks made with respect to the accused. This is not such an instance. We have held that a reference to other crimes is reversible error even when the trier of fact was "an able and experienced trial judge." *Commonwealth v. Rivers,* 218 Pa. Superior Ct. 184, 279 A. 2d 766 (1971). If the evidence of other crimes is so prejudicial as to require a reversal where such evidence is submitted in a trial before a judge sitting as trier of fact, a curative charge is unlikely to

wipe such prejudicial information from minds of jurors. The prosecutrix's statement, herein, was so prejudicial that the appellant should receive a new trial.

Accordingly, the judgment of sentence should be reversed and appellant granted a new trial.