## Commonwealth *v.* Jones, Appellant.

Argued September 17, 1974. Before WATKINS, P. J., JACOBS, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ. (HOFFMAN, J., absent).

*R. Barclay Surrick,* Assistant Public Defender, with him *Kenneth P. Barrow,* Public Defender, for appellant.

*Anna Iwachiw Vadino,* Assistant District Attorney, with her *Ralph B. D'Iorio,* Assistant District Attorney, and *Stephen J. McEwen, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY JACOBS, J., March 31, 1975:

Appellant challenges the admission into evidence of references made by two Commonwealth witnesses to books of photographs containing appellant's picture which were shown to the complainant by the police. Although we find that the references may have permitted the jury to infer that appellant had a prior criminal record, any resulting prejudice to appellant was cured and made harmless by evidence presented by the defense and the court's instructions to the jury.

On the morning of October 18, 1971, Leonard Rogers was attacked by two black males and shot in the lower chest and abdomen a total of five times. Appellant was subsequently arrested and charged with aggravated robbery, burglary and other associated crimes. At trial before a visiting judge and jury, Mr. Rogers positively identified appellant as the person who shot him. Mr. Rogers then testified that he had been hospitalized for a month subsequent to the shooting. On direct examination, the prosecuting attorney questioned Mr. Rogers as to whether the police asked him "to look through photographs in the hospital?" Immediately, defense counsel objected but the trial judge allowed the testimony. Mr. Rogers resumed his testimony and stated that he was unable to view the photographs at the hospital because he was too sick. However, according to Mr. Rogers, after he left the hospital, the police visited him at his home and brought with them two books of photographs. After looking at the photographs for 25-30 minutes, Mr. Rogers recognized appellant's photograph and mentioned this to the police. Mr. Rogers further testified that he viewed more photographs presented by the police on a second and third occasion and each time recognized appellant's picture.

Detective Perkins, who conducted the police investigation of the crime, also took the witness stand. He testified that he visited Mr. Rogers at his home on several

occasions and that each time Mr. Rogers was shown the books, he recognized appellant's picture and stated that he was the one who shot him. Further testimony revealed that Detective Perkins had no indication of the identity of any suspects to the shooting until Mr. Rogers picked out appellant's photograph.

Appellant took the stand in his own behalf and testified that he was at the Delaware County Courthouse at the time the crime in question was committed. He added that a friend, William Easton, had gone there with him and that he saw several persons at the courthouse, including the district attorney, who was supposed to present a criminal case against appellant, and the public defender, who was to represent him in that case. At the close of the case for the defense a stipulation between counsel was placed on the record that appellant had prior to this trial been convicted of a felony. Counsel further stated that the stipulation was only for the purpose of impeachment of appellant's credibility. After receiving its instructions in which the trial judge cautioned the jury that they "must not consider this evidence, that is, of prior conviction of a felony in any other way than in the determination of the credibility of the defendant as a witness," the jury retired. It later returned finding appellant guilty as charged. Motions for new trial and arrest of judgment were filed and denied, and appellant was sentenced to concurrent sentences of $1\frac{1}{2}$ to 3 years imprisonment on aggravated robbery and burglary. This appeal followed.

In our consideration of this case we will first discuss whether error resulted when reference was made to the recognition of appellant's picture in the books of photographs presented by the police. Then we will discuss whether the error, if any, was cured and made harmless by the testimony presented by appellant and the cautionary instructions of the trial judge.

No discussion is necessary for the well-settled principle that "an accused is not to be convicted of one crime by the use of evidence of other unrelated crimes; an inference of the commission of a crime at issue from the commission of such other crimes is proscribed." *Commonwealth v. McGonigle,* 228 Pa. Superior Ct. 345, 348, 323 A.2d 733, 734 (1974). The Pennsylvania Supreme Court has recognized in cases similar to the one presently before us that "after the reference to a photograph [of a defendant occurs at trial] the controlling question is whether or not a juror could reasonably infer from the facts presented that the accused had engaged in prior criminal activity." *Commonwealth v. Allen,* 448 Pa. 177, 181, 292 A.2d 373, 375 (1972). "Once it is determined that a jury could reasonably conclude from the photographic reference prior criminal activity on the part of the defendant prejudicial error has been committed." *Id.* at 182, 292 A.2d at 375. Several factors have been considered by our Court in determining whether an inference of prior criminal activity could be drawn by the jury: the sustained or passing nature of the reference; the suggestiveness of a police source for the photograph; the recognition of the defendant's picture among the photographs; and the apparent thrust or purpose of the reference. *Commonwealth v. McGonigle,* supra.

Applying these principles to the facts of the instant case we conclude that the jury could have inferred from the testimonial references that appellant had a criminal record. First, the testimony as to appellant's picture in the books was not merely a passing reference. *See Commonwealth v. Craft,* 455 Pa. 616, 317 A.2d 213 (1974). Two Commonwealth witnesses, the police detective and the complainant, described in detail the investigation used by the police with the aid of their books of photographs. Their testimony concerning "the books" covered over 17 pages of notes of testimony and constituted a considerable part of the Commonwealth's case. Second, although

the photographs were not referred to as "mug shots"[1] or "rogues' gallery," there was sufficient testimony for the jury to conclude that the books of photographs were from police files. The police detective who brought the books to the complainant's house described the photographs contained therein as being "all negro suspects" and of just the "chest area up." No testimony was given to explain any police possession of photographs unrelated to an inference of prior criminal activity. *See Commonwealth v. Turner,* 454 Pa. 439, 311 A.2d 899 (1973). Indeed, the testimony instead revealed that the police had no indication of any suspects prior to the photographic identification of appellant. Hence, it would have been impossible for the jury to draw any inference that appellant's photograph could have come from a school yearbook, friends of the suspect, or any other non-criminal source. *See Commonwealth v. Allen,* supra. Third, the record clearly reveals that appellant's picture was clearly identified as one of the photographs in the books on several occasions. Fourth and last, there is no evidence that the prosecution was guided by any impure motives when it introduced into evidence the testimony regarding the photographs. However, it is also clear that defense counsel in no way invited the prejudicial testimony, *see Commonwealth v. McGonigle,* supra, and did not fail to object when it was elicited. *See Commonwealth v. Harding,* 225 Pa. Superior Ct. 84, 310 A.2d 326 (1973). We are satisfied from our analysis of the above factors that the introduction of the testimony concerning the photographs was error.

Next we will discuss the issue of whether this error was cured and made harmless by certain testimony elicited by the defense when appellant took the stand as a witness and by the cautionary instructions of the court below. Before we consider the facts relevant to this issue,

---

1. *See Commonwealth v. DeMarco,* 225 Pa. Superior Ct. 130, 310 A.2d 341 (1973).

we must first recognize two principles regarding "harmless error." First, error is not harmless unless it is clear beyond a reasonable doubt that it did not affect the result, *Commonwealth v. Harding*, supra; second, if the defendant's testimony is to be used to cure an error elicited from the prosecution's case, it must be clear that the prejudicial evidence did not induce the defendant's testimony. *cf. Harrison v. United States*, 392 U.S. 219 (1968).

The Commonwealth ably argues that if there was any error it was rendered harmless because appellant when he took the stand testified that on the day in question he was in the courthouse to answer some criminal matter. We agree with the Commonwealth that appellant through his own testimony also brought to the jury's attention the existence of his prior criminal record. Therefore, the crucial issue that remains is whether appellant was compelled to testify to offset the error he encountered when the Commonwealth witnesses referred to the recognition of his picture in books of photographs possessed by the police. *See Commonwealth v. Guyton*, 230 Pa. Superior Ct. 168, 326 A. 2d 913 (1974). If appellant's testimony resulted from the introduction of inadmissible evidence, such testimony cannot be used to cure the prior error. *Id.*

We have carefully reviewed the record to determine whether appellant's decision to testify was a product of the introduction into evidence of the testimony concerning the photographs and have concluded that appellant's decision to testify was not a result thereof. The record reveals that prior to trial, the prosecuting attorney permitted appellant's counsel to give him notice nunc pro tunc of alibi witnesses.[2] Although, of course, appellant was not required to present his alibi defense, the discussion of alibi witnesses prior to trial does indicate that

---

2. The instant case was tried long before the decision of *Commonwealth v. Contakos*, 455 Pa. 136, 314 A.2d 259 (1974), which held unconstitutional Pa. R. Crim. P. 312 which required prior notice of alibi witnesses to be given by the defense.

appellant's decision to present his defense that he was in the courthouse at the time the crime was committed was not hastily adopted to offset any prejudice resulting from the testimony on the photographs. Moreover, appellant himself testified at trial about discussions with his lawyer long before trial regarding witnesses that may have been able to testify that he was in the courthouse when the crime was committed.

From the foregoing, we are satisfied that appellant's decision to take the stand and present a defense was not related to the prejudicial testimony introduced by the Commonwealth. Therefore, appellant's testimony cured and rendered harmless any prior erroneous ruling by the trial judge. *See Commonwealth v. Guyton,* supra and cases therein cited.

Our conclusion is reinforced by the careful cautionary instructions given to the jury by the trial judge. The charge of the trial judge speaks for itself:

"You must not and please note that this is a positive command, you must not consider this evidence, that is, of prior conviction of a felony in any other way than in the determination of the credibility of the defendant as a witness. Jurors not schooled in the laws of evidence frequently misinterpret the reasons why previous convictions for crimes are admitted into evidence and often consider such record as evidence that the defendant is an individual who is inclined toward the commission of crime. Following such reason, they then consider the previous record as evidence of persuasive guilt.

"If you do this, members of the jury, you will be in violation of your oaths as jurors and will be perverting the cause of justice. . . .

"The testimony is intended merely as some aid to you in determining whether the defendant told the truth when he testified. It is not in any sense of the word evidence of his guilt in this particular instance

but was received for the limited purpose as we have already said."

Although the above-quoted charge apparently was aimed at the stipulation of appellant's criminal record, it applied equally to any inference arising from the testimonial reference to photographs of appellant possessed by the police.

In conclusion we are convinced that any error resulting from the reference to the photographs was cured and made harmless beyond a reasonable doubt. The complainant was positive and unshaken in his identification of appellant as the perpetrator of this senseless shooting; appellant himself used his prior criminal involvement as an alibi to establish that he was in the courthouse when the crime was committed; and the trial judge carefully cautioned the jury as to the proper weight to be given any evidence of prior criminal activity.

Judgment affirmed.

HOFFMAN, J., did not participate in the consideration or decision of this case.