Commonwealth *v.* Ruza, Appellant.

10

Submitted September 8, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Ernest Kardas*, Assistant Public Defender, and *Kenneth P. Barrow*, Public Defender, for appellant.

*Ralph B. D'Iorio*, Assistant District Attorney, and *Stephen J. McEwen, Jr.*, District Attorney, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., December 22, 1975:

Counsel for appellant has alleged that the lower court erred in sentencing his client to a term of imprisonment, rather than ordering him committed to an outpatient mental health program. Subsequently, appellant filed a supplemental brief in which he contended that his attorney failed to raise specific issues that appellant had requested. He claims that because he was committed to a state mental health hospital when he pleaded guilty the court erred in accepting his plea. Because neither of these claims has merit, we affirm the judgment of sentence.

In July, 1974, appellant was separated from his wife and was feuding with her about visitation with their children. On July 26, he procured a can of gasoline and went to his wife's rented row home in Upper Darby, Delaware County. Once on the premises, he poured gasoline on the floor, on his wife's mattress, and in his wife's closet; he then ignited it. From there, he drove to his brother's home in Springfield, Delaware County. He poured gasoline on his brother's 1973 Chevrolet and set it on fire. Appellant's spree caused in excess of $3000 in damages.

Appellant was indicted for arson[1] and for criminal mischief.[2] On November 8, 1974, appellant was committed to Haverford State Hospital under §408 of the Mental Health Act for sixty days. The commitment was extended for an additional ninety days. During the period of commitment, on January 24, 1975, the appellant pleaded guilty before the Honorable William TOAL, Jr., of the Court of Common Pleas of Delaware County. At that time, the court ordered a pre-sentence investigation. On April 18, 1975, appellant was sentenced to three and one-half to ten years' imprisonment on the arson charge and to a concurrent six to twelve months' term of imprisonment on the criminal mischief charge.

Counsel for appellant filed a Petition for Reconsideration of Sentence. A hearing was held before Judge TOAL on May 16. Dr. Theodore J. Barry, Clinical Director and Director of Forensic Psychiatry at the Haverford Hospital, testified on appellant's behalf. The doctor stated that during appellant's commitment, he had shown encouraging progress. The treating psychiatrists had diagnosed appellant as suffering from a personality disorder and as lacking ability to mobilize internal controls. Appellant's poor impulse control indicated a likelihood of

---

1. Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, §1; 18 Pa. C.S. §3301.

2. Crimes Code, supra; 18 Pa. C.S. §3304.

aggressive acting out under stress. At the same time, Dr. Barry believed that appellant exhibited motivation towards improvement and that he should be afforded the opportunity of continued treatment in a carefully supervised program of outpatient psychotherapy at a community mental health center. Thereafter, the lower court rejected appellant's petition for reconsideration of sentence. Appeal is taken from the court's judgment of sentence.

I

Counsel for appellant alleges that the court erred in sentencing appellant to a term of imprisonment, rather than accepting Dr. Barry's proposed course of treatment.

The law is well-settled that the lower court has broad discretion in imposing a sentence. *Commonwealth v. Wrona*, 442 Pa. 201, 275 A. 2d 78 (1971). If the sentence is within the statutory limits, review by this Court is limited to those situations in which the lower court abuses its discretion. *Commonwealth v. Hill*, 453 Pa. 349, 310 A. 2d 88 (1973) ; *Commonwealth v. Wrona*, supra.

Dr. Barry testified as follows at the May 16 hearing:

"[By counsel for appellant] : What was the commitment the result of?

"A.    Primarily reports of depression and expressed suicidal thoughts and intent, . . .

"Q.    Now, I assume, Doctor, that tests were conducted upon his admission?

"A.    They were, sir.

"Q.    Did they result in any showing of either psychiatric or psychological disturbances of any type?

"A.    Well, his testing, both psychologic and psychiatric, indicated no presence of any psychosis. By that I mean there was no evidence of any irrational thinking. feeling, or behavior. He was relevant at all times and, from the standpoint of being able to participate in matters pertaining to his own best interest, he was thought to be quite judgmentally apt."

Further, as noted in the lower court's opinion, "[t]he prognosis for the [appellant] was very guarded and the discharge summary indicated that *the outlook of his functioning adequately in the community without conflict with the law was 'gloomy.'*

"Those individuals interviewed by the Pre-sentence investigator express fear of retaliation from the [appellant] should they ever betray him. He was described as having no regard for the rights and property of others. The Pre-sentence investigator did not recommend the [appellant's] release from custody at the time of sentence. Furthermore, consideration was given to the fact that the [appellant] had a prior criminal record." (Emphasis added).

The facts in the record amply justify the lower court's sentencing decision. Undoubtedly, as urged by appellant, a sentencing court must consider the course most likely to rehabilitate a criminal offender. Cf. *Commonwealth v. Bell,* 417 Pa. 291, 208 A. 2d 465 (1965) ; Pennsylvania Rule of Criminal Procedure 1405, Comment; 19 P.S., Appendix. At the same time, a court is also responsible for protecting society from an undue risk of repeated criminal acts. Pa. R.Crim.P. 1405, supra. Thus, we are precluded from substituting our judgment for that of the lower court.

## II

Appellant challenges the validity of his guilty plea in a supplemental "brief."[3] He contends that ". . . if he was in a state hospital, under Sec. 408 of the Mental Health Act . . . then the [lower court] should not have accepted [appellant's] guilty plea. . . ."

The same contention has been addressed on numerous occasions by our Supreme Court. See, e.g., *Commonwealth v. Turner,* 456 Pa. 309, 320 A. 2d 113 (1974) ; *Commonwealth v. Kennedy,* 451 Pa. 483, 305 A. 2d 890 (1973) ;

---

3. Appellant captioned his three-page brief a "Petition for Summary Judgment."

*Commonwealth v. Brown,* 443 Pa. 21, 275 A. 2d 332 (1971) ; *Commonwealth v. Harris,* 431 Pa. 114, 243 A. 2d 408 (1968) ; *Commonwealth ex rel. Hilberry v. Maroney,* 424 Pa. 493, 227 A. 2d 159 (1967). *Hilberry,* the leading case on point, states the relevant test: "There can be no doubt that, if Hilberry were mentally incompetent at the time he entered his plea, the same should be set aside and declared of no effect. . . . [T]he test to be applied in determining the legal sufficiency of his mental capacity to stand trial, or enter a plea at the time involved, is not the M'Naghten 'right or wrong' test, but rather his ability to comprehend his position as one accused of [a crime] and to cooperate with his counsel, in making a rational defense. See *Commonwealth v. Moon,* [383 Pa. 18, 117 A. 2d 96 (1955)]. . . . Or stated another way, did he have sufficient ability at the pertinent time to consult with his lawyers with a reasonable degree of rational understanding, and have a rational as well as factual understanding of the proceedings against him." 424 Pa. at 494-95, 227 A. 2d at 160.

Judged in light of the foregoing standards, appellant's claim is clearly without merit. Dr. Barry's testimony established that appellant would have been competent to stand trial: his testing indicated no psychosis; it also showed "no evidence of any irrational thinking, feeling, or behavior;" and "from the standpoint of being able to participate in matters pertaining to his own best interest, *he was thought to be quite judgmentally apt.*" (Emphasis added).

Therefore, the judgment of sentence is affirmed.

JACOBS and PRICE, JJ., concur in the result.

