375 A.2d 743

**COMMONWEALTH of Pennsylvania**

v.

**Joseph F. BIANCONE, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 10, 1975.

Decided June 29, 1977.

36

J. Michael Morrissey, Reading, for appellant.

Grant E. Wesner, Deputy District Attorney, Reading, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

WATKINS, President Judge:

Appellant, Joseph F. Biancone, was charged with receiving stolen property and aiding consummation of a crime. The stolen property consisted of guns and rifles. He was tried before Judge Reed, specially presiding, and a jury, and was found guilty of the charges. Appellant was sentenced to imprisonment for not less than one year nor more than two years and a fine of $2,500.00.

In this appeal, several issues are raised. Appellant's first contention is that the court below erred in denying his motion for a mistrial based on the following testimony by a state policeman who participated in a search of the appellant's premises pursuant to a search warrant.

"Q. Did you make a search of the entire premises of Mr. Biancone's house?

"A. Yes, sir.

"Q. Will you tell us what else you saw and did in the course of that search?

"A. During the course of the search, I had occasion to search a suspended ceiling, the new grid type of suspended ceiling, where there are metal grids suspended from the ceiling, and there are panels placed on top of those grids. I lifted up one of the panels and looked inside. In there, I found a 410 gauge shotgun pistol . . .

"Q. Was anything else up there?

"A. Yes, sir, there was.

"Q. What?

"A. There was a bag of what appeared to be marijuana."

Appellant's counsel objected to the answer, and the court sustained the objection. Appellant also moved for a mistrial on the ground that the answer was highly inflammatory. The motion was denied, and we agree that this was proper.

Appellant contends that the answer of the state policeman that he found what appeared to be marijuana was at the "insistence and request" of the Assistant District Attorney. The record does not support appellant's characterization of the answer. The state policeman also found money above the panels which belonged to the appellant, and he testified to this immediately after his testimony about the marijuana. When the prosecutor asked the police officer what else was above the panels, he might have anticipated that the officer's answer would have been that money was also above the panels. The record does not reveal a deliberate attempt by the prosecution to bring in evidence of a substance that might be marijuana.

The decision whether to declare a mistrial is within the sound discretion of the trial judge and will not be reversed unless there is a flagrant abuse of discretion. *Commonwealth v. Conti*, 236 Pa.Super. 488, 345 A.2d 238

38

(1975). We do not believe that the court below abused its discretion in refusing to grant a mistrial. It must be noted that the police officer did not state that he found marijuana above the ceiling panels, but only something that "appeared to be marijuana." The appellant's objection to the answer was sustained and there was no further pursuit of the question to determine whether the substance was tested or whether the officer was qualified to give an opinion concerning the contents of the bag.

Where a reasonable inference of a prior criminal record is present in the minds of the jurors, a new trial is required. *Commonwealth v. Allen*, 448 Pa. 177, 292 A.2d 373 (1972). Therefore, the issue to be decided is whether the reference to marijuana in the context of this case was tantamount to the improper introduction of evidence of a prior criminal record by the Commonwealth and so prejudiced the jury as to deprive the appellant of a fair trial. We believe that the appellant is not entitled to a new trial as the reference to the marijuana, if erroneous, was harmless error. Error may be harmless if it is clear beyond a reasonable doubt that it did not affect the result. *Commonwealth v. Jones*, 233 Pa.Super. 52, 335 A.2d 444 (1975). We have carefully reviewed the record in this case and find that there was sufficient evidence to sustain the conviction. A passing reference by the police officer to finding what appeared to be marijuana could not have determined the outcome of the case. We have considered the lack of cautionary instructions by the court and believe that such instructions were not required. The police officer did not state that he found marijuana, and cautionary instructions to the jury directing them to disregard any evidence of prior criminal convictions might well have confused the jury.

Reference to prior criminal activity by a defendant is not the type of error that always requires the grant of a new trial. Even where a witness stated that the defendant was "in jail before," the issue was not considered on appeal where no objection had been made at trial. *Commonwealth v. Smith*, 238 Pa.Super. 422, 357 A.2d 583 (1976).

■ In order to necessitate a new trial, there must be a reasonable indication of prior criminal activity. In *Commonwealth v. Rivers*, 238 Pa.Super. 319, 357 A.2d 553 (1976), a state policeman testified that the defendant "said he had done a lot of Federal time before." 238 Pa.Super. at 322, 357 A.2d at 555. This Court granted a new trial and stated 238 Pa.Super. at pages 322–323, 357 A.2d at page 555: "As long as the jury can reasonably infer prior criminal activity from the evidence presented, prejudicial error has been committed." There is no doubt that the jury could reasonably infer prior criminal activity of a serious nature by one who has been sentenced by a federal court and has served time in a federal prison.

■ The dissenting opinion cites *Commonwealth v. Williams*, 230 Pa.Super. 72, 327 A.2d 367 (1974) to support the requirement of an admonishment to the jury to disregard any testimony about prior offenses. In *Commonwealth v. Williams, supra*, the witness in telling why the defendant looked different to her stated: "Well, if a man is without drugs for nine days he may gain a little weight." 230 Pa.Super. at 74, 327 A.2d at 368. The Court sustained an objection, but denied a mistrial. The judge also instructed the jury to totally disregard the answer. In *Commonwealth v. Williams, supra*, the witness gave her opinion as to why the defendant looked different and based it on her theory that he had stopped taking drugs for nine days and had therefore gained weight. In the instant case, the witness merely stated that he found a bag which appeared to contain marijuana. He also stated that he found other things including a gun and money in the same location. We find that the reference to marijuana was so brief that cautionary instructions were not required.

■ Appellant next contends that the search warrant which formed the basis of the search of December 19, 1973 was invalid and that the evidence seized pursuant to the warrant should have been suppressed. We find in the circumstances of this case, that the search warrant was sufficiently specific and the fact that it contained some

inaccuracies does not vitiate the warrant. Judge Hoffman, in his dissenting opinion, fully discusses the issue of the validity of the search warrant and found it to be sufficient.

■ Appellant also contends that the court below erred when it stated in its charge that the jury could rightfully and correctly infer from the mere possession of the guns that the defendant had knowledge or reason to know that the guns were stolen. We have reviewed the charge, and nowhere do we find that the trial judge instructed the jury as appellant claims. The trial judge stated: ". . . you are permitted to draw from the facts which you find have been proven such reasonable and logical inferences as you may find from said proven facts. Of course, an inference is a process of reasoning by which a fact or a proposition sought to be established is deducted as a logical consequence or a state of facts already proved or admitted by the evidence." The charge did not instruct the jury that it could infer from the mere possession of the guns involved that the defendant knew or had reason to know that the guns were stolen.

■ Appellant also contends that the sentence was excessive. He argues that he received a greater sentence because he demanded a jury trial than he would have received had he entered a guilty plea. Even where a co-defendant receives a less severe sentence than a defendant, this is not grounds for reversing or reducing the defendant's sentence. *Commonwealth v. Stanton*, 239 Pa.Super. 47, 362 A.2d 355 (1976). The trial court has broad discretion in imposing sentence. The sentence in this case was within the statutory limit and, therefore, appellate review is limited to those situations in which the lower court abused its discretion. *Commonwealth v. Ruza*, 238 Pa.Super. 9, 352 A.2d 94 (1975). We find that the court below did not abuse its discretion in imposing sentence.

Judgment of sentence affirmed.

HOFFMAN, J., files a dissenting opinion in which CERCONE and SPAETH, JJ., join.

HOFFMAN, Judge, dissenting:

I would reverse appellant's conviction of receiving stolen property because the district attorney elicited testimony at trial that appellant had been in possession of marijuana at the time of the search.[1]

In September, 1968, Seward's Incorporated, a sporting goods store in Exeter Township, Berks County, was burglarized. At least thirty-four guns were taken, including a West Point Carbine 30–30, serial number Ad 14686. On September 30, 1972, a private residence in Greensburg, Westmoreland County, was burglarized and five pistols were reported missing.

On December 19, 1973, Trooper Pease of the Pennsylvania State Police submitted an affidavit for a search warrant to a district justice. The affidavit recites the following: ". . . [the affiant] has just and reasonable grounds for believing and does believe that the (3A) entirety of the premises and the curtilage, consisting of a spring house and grounds of the premises known as (3B) Residence of Joseph . . . Biancone being a (3C) 2½ story stone and aluminum siding building located at (3D) Antietam Road in the (4) Township of Lower . . . Alsace is being used for the purpose of concealing" the proceeds of a recent burglary. Trooper Pease gave the warrant to Corporal McCreary to be executed. McCreary testified at trial that "[Pursuant to that warrant] I went to a residence along Angora Road in Alsace Township, Berks County."

The search conducted on December 19, uncovered between forty and fifty guns. The serial numbers of some of the weapons, including a West Point 30–30 caliber rifle, had been ground off. The rifle was forwarded to the State Police laboratory in Harrisburg, where the police chemist was able to restore the serial number. The police thereby discovered that the weapon was one taken in the 1968 burglary of Seward's sporting goods store.

---

1. Appellant also contends that his sentence was excessive because compared to individuals who pled guilty, his was considerably longer. Because I would reverse for a new trial, I do not discuss this argument.

McCreary also found a 410 shotgun pistol, recorded its serial number, but did not seize the weapon. He subsequently performed a computer check of the serial number and learned that the pistol was stolen. On December 20, he swore out a second search warrant for appellant's home. The warrant now recited the address as Angora Road. The 410 shotgun pistol was not found during the December 20 search.

On August 7, 1974, appellant was indicted on charges of Receiving Stolen Property and Aiding Consummation of a Crime. Appellant filed a motion to suppress on October 8, 1974, denied on the same day. Appellant was found guilty by a jury of both charges on October 22, 1974. Post-trial motions were denied and this appeal followed.

Appellant contends that the lower court erred in denying his motion for a mistrial after the assistant district attorney elicited testimony that the police search uncovered marijuana as well as weapons. During direct examination of Corporal McCreary, the following exchange took place:

"Q. Did you make a search of the entire premises of Mr. Biancone's house?

"A. Yes, sir.

"Q. Will you tell us what else you saw and did in the course of that search?

"A. During the course of the search, I had occasion to search a suspended ceiling, the new grid type of suspended ceiling, where there are metal grids suspended from the ceiling, and there are panels placed on top of those grids. I lifted up one of the panels and looked inside. In there, I found a 410 gauge shotgun pistol.    .    .    .

"Q. Was anything else up there?

"A. Yes, sir, there was.

"Q. What?

"A. There was a bag of what appeared to be marijuana."

It is apparent that the district attorney was soliciting the officer's testimony that appellant possessed contraband.

Appellant's objection was sustained; but his motion for a mistrial was denied. Once the answer was offered, however, sustaining counsel's objection was of limited utility. No attempt was made by the court to give a curative instruction. Cf. *Commonwealth v. Martinolich*, 456 Pa. 136, 318 A.2d 680 (1974); *Commonwealth v. Williams*, 230 Pa.Super. 72, 327 A.2d 367 (1974).

In *Commonwealth v. Williams, supra*, the following dialogue took place: " 'Q. Were you able to identify the defendant at the preliminary hearing without anybody pointing to him or pointing him out? A. I was able to identify him, although he did look different. Q. In what way? A. His hair was different and his face had begun to fill. Q. What do you mean by that? A. The first time I saw him he had a gloss on his hair and when I saw him in the courtroom, preliminary hearing, he didn't have a gloss. Q. What do you mean by his face had begun to fill? A. Shall I really tell you what I meant? Q. Yes. A. Well, if a man is without drugs for nine days he may gain a little weight. [Defense counsel]: Objection. THE COURT: Objection sustained. . . ' After denying the appellant's mistrial, the court instructed the jury as follows: 'THE COURT: Members of the jury, this lady has been talking to you about something she thinks happened, that he used narcotics. There is nothing in this case about that. That is something in her mind and we try cases on facts and the fact she had a theory as to why, to her, this man's face changed has nothing whatsoever to do with this case. Therefore, members of the jury, if as and when you are sent to the jury room you are to totally disregard that answer and not use it in any way to determining the final conclusion in this case. . . .'" 230 Pa.Super. at 74–75, 327 A.2d at 368. We held in *Williams* that such a vigorous admonishment to the jury was sufficient to cure any possible error that resulted from the witness's statement.

In general, however, "[i]t is a fundamental precept of the common law that the prosecution may not introduce evidence of the defendant's prior criminal conduct as substan-

tive evidence of his guilt of the present charge." *Common-wealth v. Allen*, 448 Pa. 177, 181, 292 A.2d 373, 375 (1972). Our system of justice recognizes several exceptions to the above-stated rule: evidence of other criminal activity may be introduced "for the purpose of showing intent, guilty knowledge, motive, identity, plan, the accused to be one of an organization banded together to commit crimes of the nature charged, part of a chain of circumstances or one of a sequence of acts, or part of the natural developments of the facts, or mental condition, when insanity is a defense or, within limitations, for the purpose of fixing the penalty in murder cases." *Commonwealth v. Boulden*, 179 Pa.Super. 328, 336, 116 A.2d 867, 871 (1955). See also, *Commonwealth v. Heller*, 369 Pa. 457, 87 A.2d 287 (1952); *Commonwealth v. Williams, supra.* If a reference to prior criminal activity is indirect, a court must decide "whether or not a juror could reasonably infer from the facts presented that the accused had engaged in prior criminal activity. . . . Once it is determined that the jury could reasonably conclude from the . . . reference prior criminal activity on the part of the defendant prejudicial error has been committed." *Common-wealth v. Allen, supra* 448 Pa. at 181–82, 292 A.2d at 375.

In the instant case, the testimony referred to appellant's possession of marijuana.[2] There is no question that possession of marijuana is criminal conduct. See Act of April 14, 1972, P.L. 233, No. 64, § 13; as amended; 35 P.S. § 780–113. Nor can it be argued that appellant's possession of marijuana comes within any of the relevant exceptions to the general rule that evidence of criminal activity is inadmissible. Therefore, it was error for the lower court to fail to

---

2. The lower court stated in its opinion that "reference to drug addiction of the accused does not necessarily carry with it the inference that the accused has engaged in prior criminal conduct." While it violates due process to punish an accused for a "status" rather than an action, *Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), there is no question that our system of justice permits the punishment of one in possession of contraband. The testimony in the instant case does not imply that appellant was an addict, but that he possessed marijuana.

admonish the jury or to grant appellant's motion for a mistrial.

Appellant also contends that the December 19 search warrant was defective so that evidence seized pursuant to the warrant should have been suppressed.

Article I, § 8 of the Pennsylvania Constitution provides that ". . . no warrant to search any place or to seize any person or things shall issue without describing [any place or person to be seized] as nearly as may be . . . ." In my view, the issue under § 8 is whether a warrant permits the search of only one clearly specified location. *Commonwealth v. Kaplan,* 242 Pa.Super. 631, 360 A.2d 658 (1975), (HOFFMAN, J. concurring opinion); see also, *Commonwealth v. Muscheck,* 460 Pa. 590, 334 A.2d 248 (1975); *Commonwealth v. Smyser,* 205 Pa.Super. 599, 211 A.2d 59 (1965).

From testimony at the suppression hearing, it is clear that appellant's residence was located on a country road, that there were no signs in the area to demark the various intersecting roads, and that the residence was near Antietam Road: "From Mount Penn you go down Carsonia Avenue and you would come to the intersection that about five roads come together, one is Friedensburg Road, one is Antietam Road, there is a side street that goes into Pennside, I don't know the name and another road that is blocked off, and you would have to take a left-hand turn and go onto Antietam Road. Then what you come onto first is a new section just built, it goes up the hill beside the dam, Antietam Lake. Up there it turns into a two-lane sort of bumpy road and winds around through the woods. There is another road up there, I don't know what the name of it is, that goes down through the woods, back down the hill—

"THE COURT: Wait a minute, to get to Biancone's you are going off this new section onto a two-lane bumpy road—

"THE WITNESS: Also Antietam Road—

"THE COURT: Now from there—

"THE WITNESS: From there I think you only stay on the bumpy section about a quarter-mile or so and you have to make a left.

"[BY THE DISTRICT ATTORNEY]: When you make a left, is there a name to that road?

"A. I don't know what the name is. I don't recall ever seeing a road sign.

"Q. How far along on that left-hand-turn road does one proceed?

"A. I would say maybe a half or three-quarters of a mile, and that brings you out onto the road that goes by in front of Mr. Biancone's house. . . . I don't recall ever seeing a road sign there. I know if it would not be blocked off, you would come out at an intersection of Antietam Road and Carsonia Avenue, but that road is blocked off. It used to run in front of Antietam Dam.

"Q. Are you indicating if you passed Mr. Biancone's home on the road you were at that time, you would come to the intersection of Antietam Road and—

"A. The new section of Antietam Road. I was under the impression that the new section of Antietam Road passed by Mr. Biancone's house—"

The description of the house was sufficiently detailed so that, in addition to the proximity to Antietam Road and to the fact that this was Mr. Biancone's residence in Lower Alsace Township, the house searched was the only place that could have been legally searched. Cf. *Commonwealth v. Kaplan, supra.*

Therefore, I would reverse appellant's conviction and remand for a new trial. I would not, however, suppress the evidence seized pursuant to the December 19 search warrant.

CERCONE and SPAETH, JJ., join in this dissenting opinion.