Commonwealth *v.* Atkins, Appellant.

Submitted December 2, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Richard Heimann* and *John W. Packel,* Assistant Defenders, and *Vincent J. Ziccardi,* Defender, for appellant.

*Glenn S. Gitomer, Mark Sendrow,* and *Steven H. Goldblatt,* Assistant District Attorneys, *Abraham J. Gafni,* Deputy District Attorney, *Richard A. Sprague,*

First Assistant District Attorney, and *F. Emmett Fitz-patrick,* District Attorney, for Commonwealth, appellee.

OPINION BY PRICE, J., February 27, 1975:

Appellant was convicted of burglary, following a non-jury trial on March 18, 1974, and was sentenced to two-and-one-half to five years imprisonment. Oral post-trial motions for a new trial and arrest of judgment were denied on April 15, 1974. In this appeal, appellant argues that the evidence presented was insufficient to establish that he was the perpetrator of the offense, and to establish entry with an intent to commit the crime of theft.

The pertinent facts may be summarized as follows: The complainant, Jerry Salkowe, a resident of a fraternity house located at 1106 Spruce Street, Philadelphia, testified that on November 11, 1973, at about 2:00 a.m., he was awakened by a noise. He saw his door slightly open and a hand reaching in, in an apparent attempt to unhook the chain lock. Mr. Salkowe went into the hall to investigate and noticed the door to an adjoining room closing. He also heard noises, as if closets were opening and closing, emanating from this room. Together with other occupants of the house, Mr. Salkowe knocked on the door and heard a voice saying, "I am coming out." He immediately returned to his room, while the other occupants walked to the third floor landing. Mr. Salkowe then heard footsteps and the front door slam. Because his room faces the front of the building, he was able to observe the defendant standing on the sidewalk and walking away from the house. Later, when Mr. Salkowe went into the room where he had heard the voice, he saw clothes and a radio stuffed into a suitcase.

David Thayer, also a resident of the fraternity house, testified that he was with Mr. Salkowe when the intruder in the room had spoken. When Mr. Salkowe retreat-

ed to his room, Mr. Thayer had walked to the third floor landing. From that vantage point he was able to see the person walking down from the second floor to the first floor. Although he was looking down at the back of this person, Mr. Thayer was able to observe the clothing the intruder was wearing.

The description of the clothing given by both witnesses matched. Mr. Salkowe testified that the intruder wore a tan leather coat, brown cap, carried an umbrella, was black and had a beard. Mr. Thayer described a tan coat, brownish hat or cap, and also noted that the intruder carried an umbrella. They both testified that after the intruder left, the police were called. However, before the police arrived, there was a knock on the front door, and upon opening, both Messrs. Thayer and Salkowe saw the appellant standing there. The appellant stated that he was looking for a certain family and asked whether this house was the proper address. They informed him that it was not and he left. Both witnesses noted that the clothing worn by the person knocking on the door and the umbrella he was carrying were the same as that of the person they both saw leaving earlier.

Police Officer Varley testified that shortly thereafter he arrived and was informed of the facts and given a description of the intruder. Approximately thirty minutes later, Officer Varley observed the appellant about five blocks from the fraternity house. Because the coat, cap and umbrella fit the description given to him, he stopped the appellant for identification. When the appellant did not produce any, the officer reached into his patrol car to radio for a wagon to take the appellant back to the fraternity house. At that moment, the appellant bolted and ran away, but was apprehended within a few minutes. He was transported back to the fraternity house where he was identified by the witnesses.

In reviewing appellant's contentions, the evidence must be viewed in a light most favorable to the Commonwealth. *Commonwealth v. Rankin,* 441 Pa. 401, 272 A. 2d 886 (1971). In testing the sufficiency of evidence, we must determine whether, accepting as true all the Commonwealth's evidence and all reasonable inferences therefrom, if believed, it would be sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime of which he has been convicted. *Commonwealth v. Chasten,* 443 Pa. 29, 275 A. 2d 305 (1971) ; *Commonwealth v. Williams,* 432 Pa. 557, 248 A. 2d 301 (1968).

The appellant first contends that the identification of appellant by the Commonwealth witnesses, Messrs. Salkowe and Thayer, was based on speculation and constituted only circumstantial identification. In support of his position, appellant cites *Commonwealth v. Crews,* 436 Pa. 346, 260 A. 2d 771 (1970). In *Crews,* identification of the defendant was made by a witness on the basis of a gold colored sweater the witness observed defendant wearing at the time of the crime. The sweater was found in defendant's home, but the witness could not positively testify that it was the same sweater, although she did indicate that the color appeared to be the same. Other witnesses also testified to defendant's similar height and clothing, and further evidence placed defendant in proximity to the location of the crime and substantiated his association with a co-defendant. The court, in granting a motion in arrest of judgment, noted that: "[T]he Commonwealth's sole identification evidence was based on similar height and coloration, plus the clothing. In light of the myriads of people who fit the height and coloration description, and in light of the commonness of a gold sweater . . . the evidence failed to point with sufficient certitude to Crews as the perpetrator of the crime. The jury was forced to *guess* [as

to Crews' identification]. Our system recoils at sending a man to prison for the rest of his life on a *guess*." 436 Pa. at 349, 260 A. 2d at 772. [Emphasis added.]

In the instant appeal, the evidence is much stronger and points more directly at appellant's guilt than in *Crews*. See *Commonwealth v. Jones*, 452 Pa. 299, 304 A. 2d 684 (1973); *Commonwealth v. Petrisko*, 442 Pa. 575, 275 A. 2d 46 (1971). Here, the identification of appellant by Mr. Salkowe was made immediately after appellant had walked out of the front door of the fraternity house. The street was well-lit and enabled Mr. Salkowe to observe appellant's clothing and beard. Mr. Thayer observed appellant as he descended the steps in the house. The descriptions given by both witnesses matched. In addition, when appellant returned to the door of the house shortly thereafter, both witnesses identified appellant as the same man who had been in the house earlier. Both of the witnesses also made a positive identification of appellant when the police returned to the fraternity house with appellant in custody. In light of these facts, we find that the record provides an adequate factual foundation from which the trial judge could conclude beyond a reasonable doubt that appellant was the perpetrator of the charged crime.

Appellant also contends that there was insufficient evidence to establish entry by appellant into Mr. Salkowe's room with an intent to commit the crime of theft. The elements of the offense of burglary are defined as the intent to commit a crime, and the successful and effective overt act directed toward the commission of the crime by the unlicensed or unprivileged entry into a building or occupied structure. See 18 Pa. C.S. §3502.[1]

---

[1] 18 Pa. C.S. §3502, added by Act of December 6, 1972, P. L. 1482, No. 334, §1, provides in pertinent part: "(a) *Offense defined.*—A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with intent

The specific intent required to make out a burglary charge may be found in appellant's words or conduct or from the attendant circumstances together with all reasonable inferences therefrom. *Commonwealth v. Carroll,* 412 Pa. 525, 194 A. 2d 911 (1963) ; *Commonwealth v. Bova,* 180 Pa. Superior Ct. 359, 119 A. 2d 866 (1956).

In the instant appeal the requisite intent to commit the crime of theft[2] was supported by the evidence. The record reveals that when Mr. Salkowe investigated the source of the hand reaching into his door and tampering with the chain lock, he observed the door to another room, whose occupants were away for the evening, close. He also heard noises from the room which sounded as though closets were opening and closing. Mr. Salkowe further noticed that after the intruder left the room, all the clothes were taken out of a closet and, along with a radio, were stuffed into a suitcase.[3] In addition, ap-

---

to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter."

This section no longer requires a "breaking" as an element of the crime of burglary. See Act of June 24, 1939, P. L. 872, §901 (18 P.S. §4901). It is now only necessary to show an unlicensed or unprivileged entry. See Model Penal Code, §221.1, Comment (Tent. Draft No. 11, 1960).

[2] 18 Pa. C.S. §3921, added by the Act of December 6, 1972, P. L. 1482, No. 334, §1.

[3] Mr. Salkowe testified as to this point: "BY MR. KEOGH: [ASSISTANT DISTRICT ATTORNEY] Q. What did you see when you went into the room? MR. MIRSKY: [DEFENSE COUNSEL] Your Honor, I will still object to anything about that room. That is not his room. THE COURT: But he can testify to what he saw. It may not have any real meaning in the final analysis, but if he went into the room, I believe he can testify to what he observed. BY MR. KEOGH: Q. What did you see? A. I saw one of the closets was empty of clothes and there was a suitcase in the room which had them all stuffed into it, including a radio that had been stuffed into the suitcase. Q. When had you been in the room prior to that moment? A. Earlier on Friday. This was Saturday morning." [NT 12]

pellant was identified as the unauthorized person in the fraternity house during the period in question. From these circumstances, the fact-finder could validly conclude that when appellant attempted to enter the room of Mr. Salkowe, he had the intent to commit the crime of theft. [4]

Judgment of sentence affirmed.

---

[4] In his brief, appellant relies on *Commonwealth v. Lynch*, 227 Pa. Superior Ct. 316, 323 A. 2d 808 (1974), and *Commonwealth v. Freeman*, 225 Pa. Superior Ct. 396, 313 A. 2d 770 (1973). Both cases found that although the evidence was "sufficient to allow the inference of entrance with the intention of committing a *crime*, it was not sufficient to allow the inference that entrance was gained with the intention of committing a felony." 227 Pa. Superior Ct. at 319, 323 A. 2d at 810. These cases are inapposite to this appeal: 18 Pa. C.S. §3502, added by Act of December 6, 1972, P. L. 1482, No. 334, §1, requires only an intention to "commit a crime." Furthermore, the evidence in this appeal is much stronger than that in *Lynch* (two men observed leaving a building empty-handed, were arrested in the immediate vicinity and a screwdriver was found on one man) or *Freeman* (man forcibly entered the basement of an occupied apartment, exited empty-handed, and fled from the police).