365 A.2d 867

COMMONWEALTH of Pennsylvania

v.

Michael Joseph BROSKO, Appellant.

Superior Court of Pennsylvania.

Submitted April 12, 1976.

Decided Nov. 22, 1976.

Donald R. Marsh, Indiana, Court-appointed, for appellant.

W. Thomas Malcolm, Indiana, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

This is a direct appeal, after a non-jury trial, from appellant's conviction on two counts of burglary. The sole issue raised in this appeal relating to both burglary convictions, is appellant's contention that the evidence was insufficient to sustain the court's finding of guilt on these two charges.

The facts are as follows. On the night of December 28, 1974, two Pennsylvania State Police Troopers were on routine patrol in the vicinity of Route 286 in Indiana County. At approximately 4:30 A.M. in the morning they approached the intersection of Route 286 and Warren Road and at that time noticed a car parked in the Arco Station with an individual sitting behind the steering wheel. The troopers pulled into the Arco Station to investigate and at that time observed two individuals inside the gas station in the garage area running toward the garage door. By the time the troopers parked their vehicle the two subjects in the garage area were crawling on their hands and knees out a window of the garage door. The windowpane of this glass garage door had been broken out and pieces of glass were scattered around inside the garage. One subject got away and has never been apprehended or identified; however, appel-

lant, Mr. Brosko, was apprehended just as he crawled out through the garage door window and was attempting to flee from the scene. Located immediately in front of the broken garage door, the troopers found a cloth money bag with the name Consolidated Vending Company on the front of it. Inside this money bag were various statements of receipts from vending machines of a "Skat" service station, located approximately ¼ of a mile from this Arco Service Station, also on Route 286. By this time, other state troopers had arrived at the Arco station and as a result of the receipts found in the cloth money bag, they proceeded immediately to the Skat Service Station and found that it had been burglarized also. The individual who was first observed in the car parked alongside the Arco station was apprehended and, pursuant to a search warrant of his vehicle, a Sears radio with an adding machine cord wrapped around it was discovered. Subsequent investigation of the burglary of the Skat Service Station, along with the testimony of its manager, indicated that a plate glass window was smashed, the face of a cigarette machine was kicked in, and a Sears radio, a cord from an adding machine and a cloth money bag containing receipts from the vending machines were missing. As mentioned above, this Skat Service Station is located only about a quarter of a mile from the Arco station and was burglarized within a few hours earlier on the same night.

Appellant testified to the effect that he walked into the Arco Service Station from a party nearby. He stated that he did not see anyone else in the vicinity and was merely attempting to get a coke from the vending machine when the police arrested him. He denies entering the station, being observed in the station, crawling out of the garage door window of the station or attempting to flee the station. He testified that he saw the radio sitting beside the coke machine and placed it in the car parked alongside the service station because his friend

was sleeping in the car and he assumed that his friend would wake up and drive him home. He did not know whose radio it was or how it happened to be sitting in front of the Arco Service Station at 4:30 in the morning, stating only that he thought it was broken and that he would take it home and try to fix it.

■■ Based upon the above facts it is clear that sufficient evidence was presented to support appellant's conviction of burglary of the Arco Service Station. The elements of the offense of burglary are defined as the entry of a building or occupied structure thereof, with the intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter. 18 Pa.C.S. 3502. The specific intent required to make out a burglary charge may be found in appellant's words, conduct, or from the attendant circumstances together with all reasonable inferences therefrom. *Commonwealth v. Atkins*, 232 Pa.Super. 206, 335 A.2d 375 (1975); *Commonwealth v. Carroll*, 412 Pa. 525, 194 A.2d 911 (1963). In the instant case, appellant was found inside the Arco Service Station at 4:30 A.M., at a time when the premises were not open to the public and appellant was not licensed or privileged to enter. Appellant was then observed running to the door, crawling on his hands and knees, exiting through the broken glass area through which a forced entry was effected, and then attempting to flee on foot. An aluminum door leading to a back office within the Arco premises was damaged in an apparent effort to open it, and immediately outside the broken glass door was found a cloth bag with receipts from the vending machines of another service station located nearby which was determined to have been also burglarized shortly beforehand. This evidence is clearly sufficient to sustain the inference that appellant's entry into the premises was at least for the purpose of committing some crime therein, and was certainly more than mere presence at the scene. See *Common-*

*wealth v. Atkins,* supra; *Commonwealth v. James,* 230 Pa.Super. 186, 326 A.2d 548 (1974); *Commonwealth v. Moore,* 226 Pa.Super. 32, 312 A.2d 422 (1973); and *Commonwealth v. Freeman,* 225 Pa.Super. 396, 313 A.2d 770 (1973).

As to appellant's conviction of the burglary of the Skat Service Station, it is conceded that the record reveals no direct evidence actually placing appellant inside the Skat station. In order to sustain the conviction the Commonwealth must prove every essential element of a crime beyond a reasonable doubt, and a conviction must be based on more than mere suspicion or conjecture. *Commonwealth v. Bailey,* 448 Pa. 224, 292 A.2d 345 (1972). It is equally true, however, that the Commonwealth may sustain its burden on proof wholly by means of circumstantial evidence. *Commonwealth v. Sullivan,* 445 Pa. 616, 284 A.2d 504 (1971). Moreover, it is permissible for the trier of fact to draw inferences based on the evidence presented by the Commonwealth. *Commonwealth v. Fontana,* 230 Pa.Super. 463, 327 A.2d 154 (1974).

Based upon the evidence presented and the inferences to be drawn therefrom the evidence was sufficient to sustain appellant's conviction for burglary of the Skat Service Station. In addition to the similar mode of entry of these two service stations, and the relatively close proximity in time and location of these two burglaries, there is the admitted possession by appellant of "recently stolen property" to wit: the radio and adding machine cord which were stolen from the Skat Service Station within hours of appellant's apprehension at the Arco Service Station.

The leading case in this area of law is *Commonwealth v. Owens,* 441 Pa. 318, 271 A.2d 230 (1970), holding that knowledge of stolen property will no longer be *presumed* from evidence of recent possession. However, several post-*Owens* Pennsylvania Supreme Court cases, while ap-

proving the *Owens* rationale, have found it inapplicable where, inter alia, guilt is based upon an evidentiary *inference* rather than a burden-shifting presumption.[1] In *Commonwealth v. Turner*, 456 Pa. 116, 317 A.2d 298 (1974), the Court held that an inference flowing from possession of recently stolen property could "justify the conclusion that the possessor is in fact the thief," where additional facts and circumstances provide a "rational connection" or "nexus," sufficient to establish guilt beyond a reasonable doubt. Justice Nix, speaking for the majority in *Commonwealth v. Turner*, stated:

"In evaluating the inference in the case at bar, historical acceptance of the nexus between recent possession of stolen property and the identity of the thief,[4] while persuasive, is not conclusive. We must still determine whether present-day experience continues to attest to the relationship between the facts proved and the fact to be inferred. The advent of densely populated communities, revolutionary advances in communication and transportation, the increased mobility which produced a more transient pattern of living for large segments of our society, and the myriad of other changes in the nature and character of our society have combined to create the need to redefine the term 'recent possession' in an attempt to preserve its rational con-

1. The inapplicability of *Owens* is fully explained in *Commonwealth v. Shaffer*, 447 Pa. 91, 288 A.2d 727 (1972) as summarized by the following excerpt: "First *Owens* dealt with the validity of a presumption of knowledge, which as we have before pointed out is substantially different from the issue herein, namely, the validity of an inference. Secondly, *Owens* is factually inapposite for herein unlike in *Owens* it can be said with substantial assurance that the inference permitted to be drawn by the jury from Shaffer's possession of the jewelry 'is more-likely-than-not' " to flow from the proven facts on which it is made to depend.

4. See, e. g., *Wilson v. United States*, 162 U.S. 613, 16 S.Ct. 895, 40 L.Ed. 1090 (1896); *Commonwealth v. Myers*, [1] Add. 320 (1796); *Williams v. Commonwealth*, 29 Pa. 102 (1857); *Commonwealth v. Newman*, 276 Pa. 534, 120 A. 474 (1923); *Commonwealth ex rel. Chatary v. Nailon*, 416 Pa. 280, 206 A.2d 43 (1965).

nection to the identity of the thief. Recent decisions have attempted to formulate criteria for the term 'recent possession' that would correspond to a period of time within which a thief could not have had the opportunity to divest himself of possession. See, *Commonwealth v. McFarland*, 452 Pa. 435, 308 A.2d 592 (1973); *Commonwealth v. Shaffer*, 447 Pa. 91, 288 A. 2d 727 (1972).[6]

In *Shaffer*, supra, the appellant was apprehended *24 hours* after the two burglaries and was found possessed of 25 pieces of jewelry bearing the initials and names of other individuals. Under those factual circumstances the Supreme Court allowed the inference that the complicity in the burglary could "more likely than not" flow from the proved fact of possession of recently stolen property. In applying the same criteria, the Supreme Court in the subsequent case of *Commonwealth v. McFarland*, supra, reached the opposite conclusion stating:

> "The Commonwealth's case does support the inference that the appellants knew the bonds were stolen property, and thus supports the verdicts of guilty on charges of receiving stolen goods, but there is not sufficient evidence to sustain the inference that appellants participated in the burglary and larceny merely because the stolen items were found in their possession *over eleven months later*. There is nothing in this record suggesting how the bonds came into the appellants' possession. Since the possibilities of acquisition which do not involve complicity in the Sansone burglary are numerous, we do not believe that the circumstances of appellants' possession meet the 'more-likely-than-not' test

6. The suggested criteria are: 'The lapse of time between the crime and the discovery of the property; the type and kind of property; the amount and volume of the property; and the ease in which it may be assimilated into trade channels.' *Commonwealth v. McFarland*, supra, 452 Pa. at 439, 308 A.2d at 594; *Commonwealth v. Shaffer*, supra at 447 Pa. at 109, 288 A.2d at 737." [n. 5 omitted.]

established by *Shaffer*. Because the evidentiary inference of burglary and larceny cannot arise from mere possession *in this factual setting*, the Commonwealth has not sustained its burden of proof on the burglary and larceny indictments. [Emphasis added.]

In the present case the evidence clearly established that appellant was in possession of a radio and adding machine cord taken from the Skat Service Station which was burglarized within only several hours previously. Moreover, appellant's apprehension at the scene of the subsequent Arco burglary displayed the same modus operandi as was evident at the Skat burglary scene located nearby. It would be highly unlikely, if not ludicrous, that such items could have been "assimilated into trade channels" at these locations at 4:30 A.M. in the morning and only several hours after their theft. Accordingly, applying these factual circumstances to the above-stated criteria, we find the inference of appellant's commission of the burglary "more-likely-than-not" from the established fact of possession of the recently stolen property. Judgment affirmed.