407 A.2d 853

**COMMONWEALTH of Pennsylvania**

v.

**Roddy STARKES, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 15, 1978.

Decided June 8, 1979.

Reargument En Banc Denied Oct. 17, 1979.

Petition for Allowance of Appeal Denied Oct. 22, 1979.

John W. Packel, Assistant Public Defender, Chief, Appeals Division, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Chief, Appeals Division, Philadelphia, for Commonwealth, appellee.

Before PRICE, HESTER and HOFFMAN, JJ.

HOFFMAN, Judge:

█ Appellant contends *inter alia* that the evidence was insufficient to prove burglary because appellant entered a private residence with the occupant's consent. We conclude that appellant's contention is correct [1] and, accordingly, vacate the judgment of sentence and remand for resentencing.

On January 23, 1977, Philadelphia police arrested appellant on charges stemming from the armed robbery of Ms. Angela Cooper in her home on the previous evening. On June 24–29, 1977, the following testimony was adduced at appellant's jury trial:

On January 22, 1977, at approximately 5:30 p. m., Cooper was in her home; her 5 year old son Larry and 11 year old nephew Christopher were playing in the front room. Hear-

---

1. Appellant also contends that the lower court erred in its instructions to the jury concerning reasonable doubt and identification testimony. Specifically, appellant claims the court erred in giving the reasonable doubt charge of *Commonwealth v. Donough*, 377 Pa. 46, 103 A.2d 694 (1954) ("restrain" one from acting) instead of that of *Commonwealth v. Kluska*, 333 Pa. 65, 3 A.2d 398 (1939) (causes one to "hesitate"). Because the *Donough* charge remains valid, *see Commonwealth v. Young*, 456 Pa. 102, 317 A.2d 258 (1974), this contention is without merit. Appellant also contends that the lower court should have instructed the jury to receive the Commonwealth's identification testimony with caution. *Commonwealth v. Kloiber*, 378 Pa. 412, 106 A.2d 820 (1954). Because the witnesses had a good opportunity for positive identification and their identifications were not weakened by any prior failures to identify appellant or by cross-examination, we find this contention without merit.

ing a knock, Cooper went to the front door where a man she recognized as an acquaintance of Butch, her boyfriend, asked whether Butch was at home. Because she recognized the man and it was cold outside, Cooper opened the door, let the man in, and then closed the door. At that point, she heard others on the porch and, learning that they were with Butch's friend, let in two other men, one of whom was appellant.[2] Once inside, the third man aimed a gun at

2. Our review of the trial transcript reveals the following testimony of Cooper concerning the entry of the three men:

"A. [on direct examination] I opened the door. It was very cold. I opened the door, I let him [Butch's friend] in; and I was telling him Butch wasn't in, I don't know what time he was coming back.

"After I let him in and I told him Butch wasn't home and I didn't know what time Butch would be back, I heard somebody else on the porch. I asked him was these people with him. He said, yes. I opened the door. Starkes came in and another fellow came in.

"Q. . . . When you looked out the door, could you clearly see him [Butch's friend] and know him as the person who had been there [at Cooper's house]?
"A. Right.
"Q. Is that why you let him in?
"A. (Indicated affirmative.)

"Q. . . . Now, my question is how much time passed between the time the first man came in and the time the other two came in?
"A. About two minutes.

"A. When I told him I don't know what time Butch would be home, I heard somebody on the porch. I asked him 'Somebody with you?' And he said 'Yeah.' So I opened the door, they came in and I closed the door.

"Q. [on cross examination] Now, when the fellow that you knew knocked on the door, you invited him in because of the cold weather, right?
"A. Right.
"Q. He had asked you whether Butch was there, and you said something like 'Come on in,' right?
"A. Yeah.
"Q. . . . When you realized there were two other people there you asked him if he knew the other two people, right?
"A. Right.
"Q. Because it was cold, you invited them in too, right?
"A. Right."

Cooper and told her, "This is a bust, get in the kitchen." Cooper told Larry and Christopher to go upstairs; appellant and Butch's friend followed them. Cooper and the third man with the gun went into the kitchen where they stayed approximately 10 minutes. Christopher observed appellant and Butch's friend rummaging about upstairs during the same 10 minute period. Christopher watched them go back downstairs. Cooper heard her pocketbook, which contained $110 in cash, being emptied in the front room. Appellant, with Cooper's now empty pocketbook in his hand, went to Cooper and demanded where "the rest" of the money was. After approximately 10 minutes in Cooper's presence, all three men left. Cooper's keys and the $110 were missing from her pocketbook. Cooper and Christopher each identified appellant as one of the three men and testified that they each observed appellant for approximately 10 minutes at close range under good lighting conditions.

The jury returned guilty verdicts on all charges. After denying post-verdict motions, the lower court sentenced appellant to serve the following concurrent terms of imprisonment (1) 6 months to 1 year for simple assault;[3] (2) 5 to 10 years for conspiracy;[4] (3) 2 to 5 years for possession of an instrument of crime;[5] (4) 6 to 12 years for robbery;[6] and (5) 3 to 6 years for burglary.[7] This appeal followed.

Appellant contends that his burglary conviction must be vacated because the Commonwealth did not prove that his entry into Cooper's home was not licensed or privileged.[8]

The Crimes Code defines burglary as follows:

3. The Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334, § 1; 18 Pa.C.S.A. § 2701.

4. The Crimes Code, *supra*; 18 Pa.C.S.A. § 903.

5. The Crimes Code, *supra*; 18 Pa.C.S.A. § 907.

6. The Crimes Code, *supra*; 18 Pa.C.S.A. § 3701.

7. The Crimes Code, *supra*; 18 Pa.C.S.A. § 3502.

8. The Commonwealth has filed no brief and relies upon the opinion of the court below.

"A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter." [9]

Prior to the June 6, 1973 effective date of this provision, one who entered premises with an intent to commit a crime was guilty of burglary, regardless of the consent of the owner. *See Commonwealth v. Wortham*, 235 Pa.Super. 25, 342 A.2d 759, *rev'd on other grounds*, 471 Pa. 243, 369 A.2d 1287 (1975). However, under Section 3502(a), if a person is permitted to enter the premises he is not a burglar even though he intends to commit a crime.[10] *See Commonwealth v. Cost*, 238 Pa.Super. 591, 362 A.2d 1027 (1976); *Commonwealth v. Danzy*, 234 Pa.Super. 633, 340 A.2d 494 (1975). "This [change] . . . gets back to the original definition of burglary, which was the breaking and entry of a home at night. The idea that it was an *uninvited* entry into a residence made it a serious offense." (emphasis added). Jarvis, *Pennsylvania Crime Code and Criminal Law*, Comments to § 3502. *See also* Annot. 93 A.L.R.2d 531. Although the Crimes Code does not define the terms *license* and *privilege* and no case has previously interpreted the "license or privilege" portion of Section 3502(a),[11] the factual

9. The Crimes Code, *supra*; 18 Pa.C.S.A. § 3502(a).

10. Under the rules of statutory construction, we may not presume that an entry is unlicensed or unprivileged merely because the requisite criminal intent is present. *See* the Statutory Construction Act of 1972, Act of November 25, 1970, No. 230, added December 6, 1972, No. 290, § 3; 1 Pa.C.S.A. § 1921(a) ("Every statute shall be construed, if possible, to give effect to all its provisions."); *Commonwealth v. Hill*, 236 Pa.Super. 572, 346 A.2d 314 (1975) *vacated on other grounds*, 481 Pa. 37, 391 A.2d 1303 (1978) (we presume that the Legislature does not intend the provisions in its laws as mere surplusage).

11. In *Commonwealth v. Stanton*, 239 Pa.Super. 47, 362 A.2d 355 (1976), *rev'd on other grounds*, 479 Pa. 521, 388 A.2d 1053 (1978), the accused waived the issue by not filing post-verdict motions. In the instant case, appellant's counsel has assiduously raised the issue in pre-trial motion to dismiss, application for demurrer and later directed verdict, and post-verdict motion.

circumstances of several burglary cases illustrate, we believe properly, unlicensed or unprivileged entry. *See Commonwealth v. Jacobs*, 247 Pa.Super. 373, 372 A.2d 873 (1977) (entry "without permission: into another's apartment); *Commonwealth v. Brosko*, 243 Pa.Super. 312, 365 A.2d 867 (1976) (accused not licensed or privileged to enter a closed Arco station at 4:30 a. m.); *Commonwealth v. Hunter*, 234 Pa.Super. 267, 338 A.2d 623 (1975) (unauthorized entry by former employee through window of electronics plant); *Commonwealth v. Atkins*, 232 Pa.Super. 206, 335 A.2d 375 (1975) (accused unauthorized to enter fraternity house).

Based upon the above illustrations and the commonplace meanings of the terms,[12] we agree with the lower court that the element of license and privilege, in the particular context of the instant case, is quite similar to defense of consent.[13] We further agree that, like consent, license and privilege can be vitiated if they are "induced by force, duress or deception." 18 Pa.C.S.A. § 311(c)(4). We disagree, however, that the Commonwealth has shown any deception on appellant's part to gain entry.

 The Commonwealth has the burden of proving appellant's unlicensed or unprivileged entry beyond a reasonable doubt. *See Commonwealth v. Stanton*, 239 Pa.Super. 47, 51, 362 A.2d 355, 357 (1976), *reversed on other grounds*, 479 Pa. 521, 388 A.2d 1053 (1978); *Atkins, supra*, 232 Pa.Super. at 211 n. 1, 335 A.2d at 377 n. 1; *Hunter, supra*. Regarded in the light most favorable to the Commonwealth, the evidence shows that Cooper "let in" the first man because she recognized him as her boyfriend's acquaintance and because it was cold outside. When the first man acknowledged that

12. *License* means "1: permission to act . . . 3b: authority or permission of one having no possessory rights in land to do something on the land which would otherwise be unlawful or a trespass . . ."; *privilege* means "1a: a right or immunity as a peculiar benefit, advantage or favor; special enjoyment of a good or exemption from an evil or burden; a peculiar or personal advantage or right esp. when enjoyed in derogation of common right: PREROGATIVE." Webster's Third International Dictionary.

13. The Crimes Code, *supra*; 18 Pa.C.S.A. § 311.

appellant and another man were with him, Cooper opened her door and let them in too. There is no evidence to suggest that any of the three robbers asked to enter in order to visit or to wait for Butch, misrepresented their identity, stated, much less misstated their purpose, or otherwise deceived Cooper into allowing them to enter.[14] The only conclusion supportable by the evidence is that Cooper permitted the men to enter because she recognized one man and wished to be hospitable to him and those with him. No evidence suggested that any of the robbers inveigled or deceived Cooper. We hold, therefore, that the evidence was insufficient to prove appellant's unlicensed or unprivileged entry. Accordingly, we must reverse and vacate appellant's judgment of sentence for burglary.

We further order the judgment of sentence for the remaining convictions vacated and the case remanded for resentencing by the lower court. *Commonwealth v. Lockhart*, 223 Pa.Super. 60, 296 A.2d 883 (1972).

Judgment of sentence vacated and case remanded for resentencing consistent with this opinion.

HESTER, J., files a dissenting statement.

HESTER, Judge, dissenting:

I dissent. I would affirm on the Opinion of Judge Marutani of the court below. It is obvious that consent to enter the premises involved was obtained by deception. This vitiated the consent to enter.

---

**14.** The lower court's examples of deception used to gain entry are, therefore, not on point. In *United States v. Kearney*, 162 U.S.App. D.C. 110, 498 F.2d 61 (1974), the court stated in dicta that the pretext of paying a social visit plus the accused's concealment of his identity by dressing as a woman vitiated the owner's consent to enter. The court's comments were gratuitous, however, because under the relevant burglary statute consent to enter was not a defense where one is shown to have the requisite intent. In *People v. Segal*, 78 Misc.2d 944, 358 N.Y.S.2d 866 (1974) the accuseds misrepresented themselves as journalism students in order to gain entry into a broadcasting station. In the instant case there is no evidence of similar ruses or artifices.