J-A30033-18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JOSEPH MARION, | : | |
| | : | |
| Appellant | : | No. 341 WDA 2018 |

Appeal from the Judgment of Sentence January 22, 2018
in the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0007232-2016

BEFORE:  SHOGAN, J., KUNSELMAN, J. and STRASSBURGER,* J.

MEMORANDUM BY STRASSBURGER, J.:          **FILED FEBRUARY 7, 2019**

Joseph Marion (Appellant) appeals from the judgment of sentence entered January 22, 2018, after he was found guilty of robbery, theft by unlawful taking, and simple assault. We affirm.

The Commonwealth charged Appellant with the above-referenced crimes following a robbery in the City of Pittsburgh on June 5, 2016. Appellant eventually proceeded to a non-jury trial.  We begin with the trial court's summary of the facts established by the Commonwealth at Appellant's trial.

> The Commonwealth presented the testimony of the victim, [] who testified that she was walking on Forbes Avenue in Pittsburgh when a man approached her from behind, grabbed her, ripped her purse from her shoulder, threw her to the ground and ran from the scene.  As a result she sustained injuries to the left side of her face, her shoulder and knees. The victim's purse was worth approximately $250.00 and contained a small amount

_____

*Retired Senior Judge assigned to the Superior Court.

of cash and her cell phone. The victim testified that a passerby assisted her and the police were called. She described the attacker as wearing dark clothing and a blue bandanna wrapped around his head. On cross[-]examination the victim acknowledged that she had been drinking and that the assault happened "very fast." She also testified that after speaking to the police at the scene she was taken to where [Appellant] had been apprehended and she immediately identified him as the assailant.

The Commonwealth called Officer Josh Anderson of the City of Pittsburgh police who testified that he was on patrol and received a call of a robbery in the 1900 block of Forbes Avenue. He testified that he received a description of the suspect who was later located by other officers at the corner of Pride and Fifth Avenue, which was approximately five blocks away from the assault. Officer Anderson testified that when [Appellant] was taken into custody he matched the description of what the assailant was wearing "exactly." Officer Anderson testified that the victim's purse was located in the 1800 block of Forbes Avenue in a parking lot and the phone was located at the corner of Tustin and Gist Streets, approximately a half block from the assault. On cross[-]examination Officer Anderson testified that in his police report he noted the victim had "indications of alcohol," but did not believe that she was incoherent or that any of the information she provided was inaccurate.

The Commonwealth also called Officer James Aker who testified that he was on patrol when he received the call and description of the actor. He testified that as a result he was driving in the area between Fifth and Forbes Avenues and on the adjacent side streets and while stopped at a traffic light at the intersection of Fifth Avenue and Pride streets, approximately 10 minutes after receiving the call, [Appellant], who matched the description of the actor, walked in front of his vehicle. He testified that [Appellant] was alone and there was no one else in the general area that matched the description of the actor. [Appellant] was taken into custody and the victim was brought to the location and she identified [Appellant] as her attacker. On cross[-]examination Officer Aker testified that they did not find any property of the victim on [Appellant] when he was arrested.

Trial Court Opinion, 7/16/2018, at 2-3 (citations omitted). The Commonwealth rested after the foregoing testimony. Appellant did not testify nor did the defense present any witnesses.

On October 23, 2017, Appellant was found guilty of the aforementioned crimes. On January 22, 2018, Appellant was sentenced to 24 to 48 months' incarceration followed by three years' probation. On January 29, 2018, Appellant filed a post-sentence motion, which the trial court denied the next day. This timely-filed appeal followed.[1] On appeal, Appellant challenges the sufficiency of the evidence supporting his convictions. Appellant's Brief at 5. He also contends the trial court abused its discretion by denying his post-sentence motion challenging the weight of the evidence. *Id*.

Appellant's sufficiency and weight challenges rest upon similar arguments; so we shall address them together. The crux of Appellant's arguments on both issues is that the victim's identification of Appellant as the assailant who robbed her and her testimony as to the same is so unreliable such that the "identification falls patently below proof beyond a reasonable doubt" and therefore Appellant's convictions "were shocking to the judicial conscience[.]" *Id.* at 9-10.

---

[1] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant specifically points to the victim's lack of "sufficient opportunity to observe her assailant because the incident lasted only a matter of seconds, occurred late at night, and there was no testimony that the street was illuminated." *Id.* at 11. Appellant argues that because the victim was only able to provide the police with a "general description" and because there was no corroborating evidence to show Appellant was "involved in the incident," the evidence proffered by the Commonwealth at trial was insufficient to establish guilt. *Id.* at 11, 15-16 (*citing* **Commonwealth v. Crews**, 260 A.2d 771 (Pa. 1970) and **Commonwealth v. Wiley**, 432 A.2d 220 (Pa. Super. 1981)). In the alternative, based on the circumstances that existed at the time of the victim's identification, as detailed *supra*, Appellant argues "the identification was highly circumspect" and thus the trial court's finding of guilt was against the weight of the evidence. *Id.* at 18.

Our standard of review in challenges to the sufficiency of the evidence is to determine

> whether, viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth as the] verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of

proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

*Commonwealth v. Gonzalez*, 109 A.3d 711, 716 (Pa. Super. 2015)

(citation omitted).

The trial court responded to Appellant's sufficiency claim as follows.

[T]he victim credibly described her attacker as a black male wearing dark clothing and that he specifically had a blue bandana wrapped around his head. The description of the attacker was broadcast to the police and [Appellant] was found within minutes only five blocks from the attack and the clothes he was wearing matched the description of those worn by the attacker exactly. Shortly after [Appellant was] apprehended, the victim identified [Appellant] as the attacker. While there was evidence that the victim may have consumed alcohol, there was absolutely no evidence that she was intoxicated to the extent that she was unable to [perceive adequately] the events during the attack or subsequently identify [Appellant]. While it is acknowledged that the attacker approached the victim from behind and the assault took place very quickly, the evidence establishes that the victim had sufficient opportunity to observe her attacker and identify him as a black male along with his clothing and a blue bandana, which she specifically observed.

It is recognized that in a jury trial an instruction pursuant to *Commonwealth v. Kloiber*, 106 A.2d 820 [(Pa. 1954)] should be given to jurors that they should receive evidence of eyewitness identification with caution where the witness is not in a position to clearly observe the assailant; the witness is not positive as to identity; positive statements made by the witness as to identity are weakened by qualification; or, by the failure to identify a defendant on one or more prior occasions. Although not applicable in this case, the *Kloiber* instruction identifies factors or other evidence that may be considered regarding the reliability of eyewitness testimony. In this case, although the opportunity to observe [Appellant] was brief, there is no evidence that the victim did not have sufficient opportunity or ability to perceive her assailant. There is no evidence she was unable to give any description of the attacker or that she was less than positive in identifying [Appellant] shortly after the attack. Although [Appellant] argues that the identification the

night of the attack was unduly suggestive, there is no specific evidence that the victim's identification was made solely based on the circumstances surrounding the identification process. Finally, there is no evidence that her identification was weakened or qualified or that she ever failed to identify [Appellant]. In addition, the testimony of Officers Anderson and Aker established that [Appellant], who matched the description of the attacker, was located within blocks of the attack within minutes of the attack. Considering all of the evidence, and the reasonable inferences therefrom, it is clear that the Commonwealth established sufficient evidence to support the verdict.

Trial Court Opinion, 7/16/2018, at 4-5.

Reviewing the evidence in light most favorable to the verdict winner, we conclude the trial court's findings and conclusions are supported by the record. *See Commonwealth v. Minnis*, 458 A.2d 231, 233 (Pa. Super. 1983) (concluding there was sufficient evidence to sustain Minnis's adjudication of delinquency when, *inter alia*, "the victim's boyfriend [who witnessed the robbery], although he qualified his identification by reference to [Minnis's] jacket, did not shy away from identifying appellant himself and not just his clothing)."

Additionally, we find Appellant's reliance upon **Crews** and **Wiley** misplaced. As summarized by a prior panel of this Court in **Commonwealth v. Atkins**, in **Crews**, *supra*,

identification of [Crews] was made by a witness on the basis of a gold colored sweater the witness observed [the assailant] wearing at the time of the crime. The sweater was found in [Crew's] home, but the witness could not positively testify that it was the same sweater, although she did indicate that the color appeared to be the same. Other witnesses also testified to [Crew's] similar height and clothing, and further evidence placed [Crews] in proximity to the location of the crime and

substantiated his association with a co-defendant. The [Supreme C]ourt, in granting a motion in arrest of judgment, noted that:

> (T)he Commonwealth's sole identification evidence was based on similar height and coloration, plus the clothing. In light of the myriads of people who fit the height and coloration description, and in light of the commonness of a gold sweater . . . the evidence failed to point with sufficient certitude to Crews as the perpetrator of the crime. The jury was forced to [g]uess [whether it was Crews or another man who committed the crime]. Our system recoils at sending a man to prison for the rest of his life on a [g]uess.

*Atkins*, 335 A.2d 375, 377 (Pa. Super. 1975).

In *Wiley*, *supra*, this Court found that the evidence of Wiley's identification was insufficient to support a finding of guilt beyond a reasonable doubt to sustain Wiley's convictions for burglary and theft. *Wiley*, 432 A.2d at 220. In that case, the victim, Barbara Carino, was working at a restaurant she owned, when she was informed that someone was in her apartment, which was located above the restaurant. *Id.* at 221. Carino asked Philip Craig to accompany her upstairs to investigate. *Id.* After entering the apartment and "[w]hile examining the scene, a black male of medium build ran through her kitchen, down the hall, down the stairway, and out the front door." *Id.* She only saw him for a few seconds but "believed, however, that he was [] Butchy Deas, a black male whom she had employed in the past to clean her apartment, and who had access to it." *Id.* However, Craig told police that it might have been Wiley. At trial, Craig first testified that he was "about 50 percent" sure that Wiley was the

individual he saw running out of the apartment. *Id.* at 222. Later, Craig stated he was "70 percent'" sure. *Id.* This Court reversed Wiley's conviction, concluding the identification of Wiley was insufficient based upon Craig's uncertainty in his identification, Carino's identification of another man, and that fact there was no additional corroborating evidence.

In this case, unlike in *Crews* and *Wiley*, the victim's identification was unequivocal. She testified that despite the entire incident happening "very fast," she was able to see Appellant as he robbed her of her belongings. She provided a description to police and was able to identify Appellant, who was found in close proximity to where the robbery took place, shortly after the incident occurred. N.T., 10/23/2017, at 11-14, 23. Clearly, the evidence presented at Appellant's non-jury trial supporting the identification of Appellant was much stronger than what was presented in *Crews* and *Wiley*. "As such, the present case is controlled by the more general rule that any uncertainty in an eyewitness's identification of a defendant is a question of the weight of the evidence, not its sufficiency. We therefore conclude that [Appellant's] argument that the evidence at trial was insufficient to sustain his convictions fails." *Commonwealth v. Cain*, 906 A.2d 1242, 1245 (Pa. Super. 2006).

Furthermore, we conclude the trial court did not abuse its discretion in determining the verdict was not against the weight of the evidence. Trial Court Opinion, 7/16/2018, at 6.

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

In reviewing the propriety of identification evidence, the central inquiry is whether, under the totality of the circumstances, the identification was reliable....

As this Court has explained, the following factors are to be considered in determining the propriety of admitting identification evidence: the opportunity of the witness[ ] to view the perpetrator at the time of the crime, the witness'[s] degree of attention, the accuracy of [her] prior description of the perpetrator, the level of certainty demonstrated at the confrontation, and the time between the crime and confrontation.

***Commonwealth v. Brown***, 23 A.3d 544, 557–58 (Pa. Super. 2011) (citations and quotation marks omitted).

In light of the testimony provided at trial and considering the totality of the circumstances, we conclude that the trial court did not abuse its discretion in determining that the victim's identification of Appellant was reliable. Despite the brief encounter, the victim saw Appellant as he wrestled for her purse, described him to police shortly after the incident occurred, and unequivocally identified Appellant as her assailant after Appellant was apprehended by police a short distance from the crime scene, matching the victim's description "exactly." N.T., 10/23/2017, at 11-14, 24.

The trial court found the victim's testimony related to her identification of Appellant credible. Based on the foregoing, it was not an abuse of discretion for the trial court to hold that Appellant's conviction for robbery and related crimes based on the victim's identification was not so contrary to the evidence as to shock his sense of justice. *See Commonwealth v. Lewis*, 911 A.2d 558, 566 (Pa. Super. 2006) (pointing out that in "criminal proceedings, the credibility of witnesses and weight of evidence are determinations that lie solely with the trier of fact, [which] is free to believe all, part, or none of the evidence.") (citation and quotation marks omitted).

Accordingly, after a thorough review of the record and briefs, we find Appellant has presented no issue on appeal which would convince us to disturb his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 2/7/2019